**EXHIBIT 1**

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** Eric Shane Ainsworth, an individual;
*(AVISO AL DEMANDADO):* Lisa Lynn Aldava, an individual;
Serena Mai Greenwood, an individual; Ruben D. Hernandez,
Jr., an individual; Deana H. Schweitzer, an individual;
Catherine S. Sherman, an individual; and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:** ROBERT HALF INTERNATIONAL
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* INC., a Delaware
corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/23/2014** at 03:15:45 PM

Clerk of the Superior Court
By Andrea Santiago, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of the State of California, County of San Diego
220 West Broadway
San Diego, CA 92101

**CASE NUMBER:**
*(Número de Caso):* 37-2014-00032323-CU-BT-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Roland M. Juarez                    213.532.2000    213.532.2020
HUNTON & WILLIAMS LLP
550 S. Hope Street, Suite 2000
Los Angeles, CA 90071

DATE: 09/24/2014 , 2014          Clerk, by _____ *A. Santiago* _____ , Deputy
*(Fecha)*                         *(Secretario)*   A. Santiago        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**



Code of Civil Procedure §§ 412.20, 465

**EXHIBIT 2**

1   **HUNTON & WILLIAMS LLP**
    Roland M. Juarez (State Bar No. 160793)
2   Email: rjuarez@hunton.com
    550 South Hope Street, Suite 2000
3   Los Angeles, California 90071-2627
    Telephone: (213) 532-2000
4   Facsimile: (213) 532-2020

5   **HUNTON & WILLIAMS LLP**
    Y. Anna Suh (State Bar No. 228632)
6   Email: asuh@hunton.com
    575 Market St., Suite 3700
7   San Francisco, CA 94105
    Telephone: (415) 975-3707
8   Facsimile: (415) 975-3701

9   Attorneys for Plaintiff
    ROBERT HALF INTERNATIONAL INC.

10

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/23/2014** at 03:16:45 PM

Clerk of the Superior Court
By Andrea Santiago, Deputy Clerk

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                          COUNTY OF SAN DIEGO

13  ROBERT HALF INTERNATIONAL INC., a      CASE NO.: 37-2014-00032323-CU-BT-CTL
    Delaware corporation,
14                                          **COMPLAINT FOR:**
                    Plaintiff,
15                                          **(1)  BREACH OF FIDUCIARY DUTY
                                                 AGAINST ALDAVA**
16          v.
                                            **(2)  BREACH OF WRITTEN CONTRACT
17  ERIC SHANE AINSWORTH, an individual;        AGAINST ALDAVA**
    LISA LYNN ALDAVA, an individual;
18  SERENA MAI GREENWOOD, an                 **(3)  BREACH OF IMPLIED COVENANT
    individual; RUBEN D. HERNANDEZ, JR.,         OF GOOD FAITH AND FAIR
    an individual; DEANA H. SCHWEITZER, an       DEALING AGAINST ALDAVA**
19  individual; CATHERINE S. SHERMAN, an
    individual; and                         **(4)  TORTIOUS INTERFERENCE WITH
20  DOES 1 - 20,                                 CONTRACT AGAINST ALDAVA**

21                  Defendants.             **(5)  TORTIOUS INTERFERENCE WITH
                                                 PROSPECTIVE ECONOMIC
22                                               ADVANTAGE AGAINST ALDAVA**

23                                          **(6)  TORTIOUS INTERFERENCE WITH
                                                 PROSPECTIVE ECONOMIC
                                                 ADVANTAGE (AT-WILL
24                                               EMPLOYEES) AGAINST ALDAVA**

25                                          **(7)  LANHAM ACT VIOLATION AGAINST
                                                 AINSWORTH**
26
                                            **(8)  BREACH OF WRITTEN CONTRACT
27                                               AGAINST AINSWORTH**

                                            **(9)  BREACH OF IMPLIED COVENANT
28                                               OF GOOD FAITH AND FAIR**

                              COMPLAINT

DEALING AGAINST AINSWORTH

(10) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST AINSWORTH

(11) LANHAM ACT VIOLATION AGAINST SCHWEITZER

(12) BREACH OF WRITTEN CONTRACT AGAINST SCHWEITZER

(13) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST SCHWEITZER

(14) BREACH OF WRITTEN CONTRACT AGAINST HERNANDEZ

(15) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST HERNANDEZ

(16) BREACH OF FIDUCIARY DUTY AGAINST SHERMAN

(17) BREACH OF WRITTEN CONTRACT AGAINST SHERMAN

(18) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST SHERMAN

(19) BREACH OF WRITTEN CONTRACT AGAINST GREENWOOD

(20) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST GREENWOOD

(21) UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS ACTS OR PRACTICES, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.

(22) UNFAIR COMPETITION

DEMAND FOR JURY TRIAL

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2
COMPLAINT

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Plaintiff Robert Half International Inc. ("RHI"), for its Complaint against Defendants Eric Shane Ainsworth, Lisa Lynn Aldava, Serena Mai Greenwood, Ruben D. Hernandez, Jr., Deana H. Schweitzer, Catherine S. Sherman ("Defendants"), and other as of yet unnamed defendants, alleges as follows:

## INTRODUCTION

1.      This is a case of blatantly unfair, illegal, and improper competition, the very sort of unlawful "business practices" that the law strictly prohibit.  California and public policy alike recognize, protect, and even encourage competition in the business sector. California allows that competition to be quite vigorous.  But the competition must be fair and it must be lawful.

2.      For several years, Roth Staffing Companies, LP's ("Roth") stated goal (vocalized in a threatening phone call to RHI) has been to poach RHI's employees in order to cause damage to RHI. Roth has created a culture where its employees disregard laws and contractual obligations and the rules of fair competition all in an effort to damage RHI.  Roth has lured dozens of RHI employees, the number increasing dramatically in the last year, to Roth's Southern California offices.  These employees have engaged in a slew of unlawful acts against RHI.

3.      Six of these former RHI employees, the Defendants in this case, have been most egregious in ignoring the limits of fair, vigorous competition and engaging in unfair, fraudulent, and unlawful competition from the moment they decided to leave RHI.  They have purposefully deceived RHI clients, candidates, and employees in order to enrich themselves and Roth, and to damage RHI.  The Defendants have done so in ways that breached fiduciary duties, implied covenants, express contractual terms, and the law.  These improper competitive tactics have enabled Roth's companies to compete for clients and customers at levels that would otherwise be unattainable without making the same amount of significant expenditures of time and resources made by RHI.

4.      No action is too brazen for these individuals – making false statements to RHI clients in order to damage RHI's reputation with that client; masquerading as current RHI employees to find business opportunities and steal business, using confidential information to obtain mass defections, using confidential information to poach RHI clients; and sending blast solicitation e-mails to RHI

1    employees and candidates.  Their unlawful acts continue, unabated, despite RHI's reminders of their

2    post-employment contractual obligations and legal consequences of their actions.

3        5.    RHI must act now to protect its confidential business information, its employment

4    relationships, and its name against the ongoing illegal exploitation of those assets.  The Defendants'

5    unfair competition must be stopped.

6                                **PARTIES**

7        6.    Plaintiff RHI is a Delaware corporation with its corporate headquarters and principal

8    place of business in Menlo Park, California.

9        7.    Upon information and belief, Defendant Eric Shane Ainsworth is an individual who

10   resides in Los Angeles, California.

11       8.    Upon information and belief, Defendant Lisa Lynn Aldava is an individual who

12   resides in Poway, California.

13       9.    Upon information and belief, Defendant Serena Mai Greenwood is an individual who

14   resides in La Mesa, California.

15       10.   Upon information and belief, Defendant Ruben D. Hernandez, Jr., is an individual

16   who resides in San Diego, California.

17       11.   Upon information and belief, Defendant Deana H. Schweitzer is an individual who

18   resides in Huntington Beach, California.

19       12.   Upon information and belief, Defendant Catherine S. Sherman is an individual who

20   resides in Oceanside, California.

21       13.   The true names and capacities of the defendants sued under the fictitious names of

22   DOES 1 through 20 are unknown to RHI, and RHI will seek leave of court to amend this Complaint

23   to allege such names and capacities as soon as they are ascertained.

24                      **JURISDICTION AND VENUE**

25       14.   Venue is proper in San Diego County, State of California, pursuant to Code of Civil

26   Procedure § 395 because, on information and belief, Defendant Aldava is a resident of Poway,

27   California, Defendant Greenwood is a resident of La Mesa, California, Defendant Hernandez is a

28   resident of San Diego, California, and Defendant Sherman is a resident of Oceanside, California,

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2
COMPLAINT

1    which are each in San Diego County.

2        15.    RHI seeks damages in excess of that required for jurisdiction in this Court and it

3    further seeks preliminary and permanent injunctive relief.

4                              **GENERAL ALLEGATIONS**

5                            **Robert Half International Inc.**

6        16.    RHI is a professional staffing services firm founded in 1948, specializing in recruiting

7    and placing temporary and permanent employees with clients or customers of RHI. RHI has branch

8    offices located throughout North America, including in California.

9        17.    RHI's success as an industry leader and its competitive advantage are directly related

10   to its ability to hire, train, develop, and retain top talent in whom it invests significant resources and

11   who are entrusted with key confidential business information, including RHI's procedures, financial

12   and personnel plans, objectives and strategies, compensation and bonus structures, training platforms

13   and technology, and information about existing and prospective clients, candidates, and employees.

14   RHI expends considerable time and resources in these efforts, which provides RHI with a distinct

15   competitive advantage.

16       18.    RHI also expends much effort to maintain and cultivate its existing client and

17   candidate relationships and to develop new relationships. To keep its competitive advantage, RHI

18   invests substantial time, effort, and expense into organizing, analyzing, using, and maintaining

19   confidential and proprietary business information. All of the Defendants had access to this

20   information, including RHI's valuable database, the tool that RHI uses to successfully operate its

21   business and to maintain its competitive advantage over competitors and others.

22       19.    As a result, as a condition of their employment, RHI requires its employees to sign

23   documents to safeguard RHI's confidential business and personnel information, which create a duty

24   not to disclose or use this information outside of their employment with RHI, including after the

25   termination of their employment. RHI also enters into employment agreements with its employees,

26   including each of the defendants here, which prohibit former RHI employees from using RHI's

27   name and their prior employment experience at RHI to market a competing business.

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**Defendants' Wrongful Acts and Unfair Competition**

RHI's La Jolla Office

20.    RHI hired Defendant Aldava in 2009 to work for RHI's branch in La Jolla, California, as the Director of Permanent Services for Robert Half Finance & Accounting. This was a management and leadership position in which Aldava oversaw RHI's Permanent Services group in La Jolla, supervising several other RHI employees, including Defendants Greenwood and Sherman. As a supervisor, Aldava was privy to RHI's confidential business information relating to the employees she supervised, including client lists and compensation information.

21.    Defendant Greenwood was hired in 2010 as a Recruiting Manager for Robert Half Finance & Accounting. Defendant Sherman was hired in 2011 as a Recruiting Manager for Robert Half Finance & Accounting, and later promoted to Division Director.

22.    On or about July 25, 2014, Aldava, Greenwood, and Sherman jointly approached Tina Fox, the Metro Manager for the La Jolla office, verbally announced their resignations, and provided resignation letters.  Aldava and Greenwood resigned effective immediately, with Sherman leaving the following week.

23.    Upon information and belief, Aldava, Greenwood, and Sherman all joined Ledgent Staffing, a subsidiary of Roth, shortly thereafter.  Upon information and belief, Aldava coordinated the group defection and used RHI's confidential business information to assist Ledgent in making successful offers of employment to Greenwood and Sherman.

24.    On her final day at RHI, Aldava met with an RHI employee to turn over her files. Aldava admitted that she had contacted almost every one of RHI's clients and candidates she had worked with to tell them that she was leaving.

25.    Upon information and belief, Aldava falsely told a representative of the branch's biggest client that RHI had instructed Aldava that her Permanent Services group should not perform any more work for that client and that RHI was no longer interested in doing business with that client. These misrepresentations were made in an obvious effort to obtain that business for herself and Roth.

26.    Upon information and belief, since their departures, Aldava, Sherman, and

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

1   Greenwood have continued calling clients and candidates with whom they worked at RHI to obtain

2   business for Ledgent.

3       27.     Days after Sherman resigned from RHI, a client with whom Sherman had worked at

4   RHI accidentally forwarded a signed contract with Ledgent to Sherman's former RHI address.

5       28.     Similarly, on or about August 4, 2014, a client with whom Greenwood had worked at

6   RHI sent a signed contract to Greenwood's prior RHI email address by accident. The contract had

7   been negotiated by Greenwood on behalf of Ledgent.

8       29.     In addition, upon information and belief, shortly after Aldava's departure, a candidate

9   with whom Aldava worked at RHI mistakenly emailed Aldava's former RHI account with a resume

10  intended for a position with an RHI client. The position had opened only after Aldava left RHI.

11      30.     As RHI attempted to recover from this significant loss to its La Jolla office, it

12  discovered that Aldava, Greenwood, and Sherman had done even more damage than the sudden

13  resignation. During the month before they resigned, the three had been taking more and more time

14  away from the office. In fact, RHI's regional manager had to speak with Aldava about her team's

15  excessive time off in the month of July 2014. RHI also found that both production and business

16  development from Aldava, Greenwood, and Sherman were significantly decreased during July 2014.

17  This lack of business development has damaged and continues to damage RHI.

18      31.     Aldava and Sherman also continue to exploit their experience at RHI in online

19  advertising in violation of their employment contracts.

20                              RHI's Carlsbad Office

21      32.     RHI hired Defendant Ainsworth in March 2013 as a Staffing Manager for its

22  OfficeTeam division, working out of the branch office located in Carlsbad, California. Ainsworth

23  resigned from his employment with RHI on or around February 28, 2014, to join Ultimate Staffing, a

24  subsidiary of Roth.

25      33.     Instead of respecting his contractual and legal obligations to RHI, Ainsworth

26  exploited RHI's confidential information after leaving RHI to benefit Ultimate Staffing. Ainsworth

27  has unfairly and illegally solicited numerous current clients that Ainsworth met through RHI.

28      34.     In the months after he left, for example, Ainsworth pretended he still worked for RHI

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   to deceive clients into doing business with him and Ultimate Staffing.  Ainsworth contacted an RHI

2   client to check the status of a candidate he had placed on behalf of RHI. When the client mentioned

3   that another replacement needed to be hired, Ainsworth took on the assignment to fill that position,

4   all without telling the client that he no longer worked for RHI. A few days later, the client learned of

5   the deception during a conversation with the RHI contact who had replaced Ainsworth, and

6   expressed shock and surprise about Ainsworth's misrepresentations.

7        35.     Moreover, Ainsworth has exploited RHI's name and goodwill to boost his business.

8   He advertises his RHI experience and the awards he received from RHI on LinkedIn, and he solicits

9   RHI candidates to view his page and recommend his services, all in violation of his contract.

10       36.     Ainsworth has also continued soliciting RHI's clients using RHI's confidential

11   business information to gain an unfair competitive advantage. At least two RHI clients are now

12   working with Ainsworth on behalf of Ultimate Staffing, as he, upon information and belief, was able

13   to exploit his knowledge of RHI's confidential and proprietary business information to craft his

14   offers to the clients.

15       37.     Ainsworth has also sent blast solicitation e-mails to RHI's temporary employee lists,

16   in violation of his contract and the law.

17       38.     Defendant Hernandez was also a Staffing Manager in RHI's Carlsbad office, hired in

18   July 2013 as part of the Accountemps division. He resigned his employment on or around March 24,

19   2014, and went to join Ultimate Staffing as well.  He too continues to advertise his RHI experience

20   on LinkedIn to gain business for Ultimate Staffing.

21       39.     Shortly after Ainsworth left RHI's employ, he and Hernandez (who was still

22   employed with RHI at the time) tricked a fellow RHI employee, Danielle Healis, into attending

23   lunch with Ainsworth to recruit her to Ultimate Staffing. Further, since he has left his employment

24   with RHI, Hernandez has continued his efforts to recruit Healis to Ultimate.

25       40.     Hernandez conducted further unfair and illegal acts during his final days with RHI.

26   Over the course of his employment with RHI, Hernandez printed a lot of RHI's confidential business

27   materials and put them in a training binder. That binder has not been seen at RHI's Carlsbad office

28   since Hernandez left.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

<u>RHI's Orange Office</u>

41.     Defendant Schweitzer was a Division Director in RHI's branch in Orange, California, hired in March 2013. She resigned from RHI in July 2014 and went to work for Ledgent, an affiliate of Roth.

42.     Schweitzer has used unfair and illegal methods to solicit RHI clients and has traded on RHI's name and goodwill to try to grow her business.  For example, soon after joining Ledgent, Schweitzer contacted and attempted to solicit business from an RHI client. She did not disclose that she was now working for another company, and, upon information and belief, she represented to the client that she was still working for RHI.  In fact, Schweitzer's LinkedIn profile also represents that she is currently employed by both Ledgent and RHI.  The deception was revealed when the confused client called its actual RHI contact to ask why Schweitzer was calling instead of the regular RHI contact.

### Defendants Signed Employment Agreements Governing Their
### Employment and Restricting Certain Post-Employment Behavior

43.     As conditions of their employment, Defendants signed employment agreements with RHI. True and correct copies of the executed Employment Agreements are attached hereto as Exhibit A.

44.     Paragraph 4 of the Employment Agreements signed by each Defendant provides as follows regarding employee's obligations to work for and be loyal to RHI:

> Performance of Duties. **During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent.**

45.     Paragraph 8 of the Employment Agreements provides as follows regarding RHI's confidential information:

> Disclosure or Misuse of Confidential Information. **Employee shall not, at any time during Employee's Employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies, including, without limitation, information with respect to**

7

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**the name, address, contact persons or requirements of any** customer, client, applicant, candidate or **employee of any of the RHI Companies** (whether having to do with temporary, contract or permanent employment) **and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.** Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment Employee shall deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

46.     Paragraph 11 of the Employment Agreements provides as follows regarding nonsolicitation of RHI employees:

<u>Non-solicitation of Other Employees</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), **Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor.** The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

47.     Paragraph 7 of the Employment Agreements defines the following relevant terms:

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Applicable Office" means any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

48.     Paragraph 13 of the Employment Agreements provides the following regarding use of the RHI name after employment by RHI has ended:

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wrongful Use of Employer's Name. After termination of Employee's employment with Employer, **Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.** The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

49.    Finally, in Paragraph 14 of the Employment Agreements, each Defendant expressly agreed that the restrictions in various provisions of the Agreements, including Paragraphs including 11 and 13 were "reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests" of RHI and that these restrictions would not prevent them from earning a livelihood. They further agreed that temporary and permanent injunctive relief would be appropriate remedies against an actual or threatened breach of these covenants.

## FIRST CAUSE OF ACTION

## FOR BREACH OF FIDUCIARY DUTY

### (Against Defendant Aldava)

50.    RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

51.    Aldava was a fiduciary of RHI by virtue of her leadership position and management role at RHI—Director of Permanent Services—and the trust and confidence RHI had placed in her.

52.    As a fiduciary, Aldava owed fiduciary duties to RHI to protect RHI's interests, to fully and loyally perform her duties at RHI, and not to do anything contrary to the interests of RHI or that would injure RHI or that would deprive RHI of profit or advantage that her skills and abilities might properly bring to RHI or that RHI might make in the reasonable and lawful exercise of its powers.

53.    Aldava was given and had access to information about the strengths and weaknesses, compensation packages and benefits, and particular needs and requirements of the RHI employees she supervised. She was also given and had access to RHI's confidential and proprietary information and business opportunities in accordance with the terms of her employment with RHI. Aldava voluntarily accepted the trust and confidence RHI had placed in her and in her integrity.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

54.     Aldava breached her fiduciary duties to RHI, allowing a competitor to compete unfairly with RHI and to damage RHI's business. To achieve these goals, Aldava breached her fiduciary duties to RHI by, among other things: (1) soliciting the RHI employees she was supervising to leave the employ of RHI and go to work for a competitor; (2) spending large amounts of time away from the office, failing to develop RHI's business, and encouraging the employees she was taking with her to do the same; (3) organizing and participating in a coordinated scheme to resign; (4) informing every RHI client with whom she was working that she was leaving her employment with RHI; and (5) misleading an RHI client into believing that RHI did not want that client's business.

55.     As the direct and proximate result of Aldava's misconduct, RHI has suffered harm in an amount to be proven at trial.

56.     The aforementioned acts of Aldava were willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

<u>**SECOND CAUSE OF ACTION**</u>

**FOR BREACH OF WRITTEN CONTRACT**

**(Against Defendant Aldava)**

57.     RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

58.     As alleged herein, Defendant Aldava entered into an Employment Agreement with RHI, agreeing to comply with the terms therein.

59.     RHI has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Employment Agreement, except for those conditions and covenants for which performance by RHI was excused.

60.     Aldava's actions as alleged above breached the conditions, covenants, promises, and obligations required of her Employment Agreement, including: (1) she breached Paragraph 4 by coordinating a joint resignation with the employees she was supervising, informing her clients that she was leaving employment with RHI while withholding that information from RHI, spending large amounts of time out of the office in the month before she left, and not devoting her best efforts to

1   developing RHI's business; (2) she breached Paragraph 8 by disclosing and using RHI's confidential

2   business information to solicit business from RHI clients with whom she had worked while

3   employed by RHI; and (3) she breached Paragraph 13 by touting her RHI experience and

4   background for her new employer's benefit.

5       61.   Aldava acknowledged in Section 14 of her Employment Agreement that in the event

6   of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI would

7   be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a proximate

8   result of the above detailed breaches, RHI has in fact been irreparably injured and has suffered

9   damages in an amount to be determined at trial.    Because its remedy at law is inadequate, RHI also

10  seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against

11  Aldava.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12              **THIRD CAUSE OF ACTION**

13  **FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

14              **(Against Defendant Aldava)**

15      62.   RHI hereby incorporates by reference and realleges each of the allegations contained

16  in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

17      63.   The employment agreement between RHI and Aldava contained an implied covenant

18  of good faith and fair dealing. This implied covenant obligated Aldava to refrain from doing any act

19  that would deprive RHI of the benefits of the agreement or that would impede RHI from performing

20  any or all of the conditions of the agreement that it agreed to perform.

21      64.   Aldava's misconduct as described herein breached the implied covenant of good faith

22  and fair dealing. Specifically, Aldava, while employed in a position of leadership by RHI, exploited

23  that position to solicit the employees that she was supervising to leave RHI's employment and join

24  her in working for a competitor. She coordinated a joint resignation with these employees and led

25  them in failing to develop RHI's business during the month leading up to that resignation. In

26  addition to failing to perform her duties as expected and leading her team in (not) doing the same,

27  she also contacted every one of the RHI clients with which she worked to inform them of her plans.

28  She even made one such client believe that RHI no longer was interested in doing business with that

11
COMPLAINT

1   client. All of these wrongful acts were committed in bad faith with the intent and the result that RHI

2   was deprived of the benefits of the employment agreement.

3        65.    As a proximate result of these breaches, RHI has been irreparably injured and has

4   suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate,

5   RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive

6   relief against Aldava.

7   **FOURTH CAUSE OF ACTION**

8   **FOR TORTIOUS INTERFERENCE WITH CONTRACT**

9   **(Against Defendant Aldava)**

10        66.    RHI hereby incorporates by reference and realleges each of the allegations contained

11   in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

12        67.    As alleged herein, RHI employees, including Greenwood and Sherman, agreed that,

13   during their employment, they would "devote [their] best efforts and entire working time to the

14   performance of [their] duties" and "shall perform such duties to the best of [their] ability." RHI

15   compensates its employees in exchange for the performance of their duties, and with the belief and

16   understanding that its employees are performing to the best of their abilities as promised.

17        68.    As the supervisor of Greenwood and Sherman, Aldava had specific knowledge that

18   the employment agreements of Greenwood and Sherman imposed these obligations, having also

19   agreed to the same terms herself. Nevertheless Aldava knowingly intended to induce and in fact did

20   induce Greenwood and Sherman to unlawfully breach their contractual obligations to RHI by being

21   absent from the office and not devoting their best efforts to developing RHI's business.

22        69.    As a proximate result of Aldava's misconduct and her inducement of Greenwood and

23   Sherman to breach their contractual obligations to RHI, RHI has been irreparably injured and has

24   suffered damages in an amount to be proven at the time of trial. Among other things, RHI was

25   paying compensation to employees who were not performing their jobs as promised but instead were

26   actively engaged in harming RHI. RHI also experienced loss of revenue due to the failures of its

27   employees to properly perform their jobs in the weeks leading up to their departure.

28        70.    Aldava's wrongful acts also were willful, oppressive, malicious and/or fraudulent,

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12
COMPLAINT

1    thereby justifying an award of punitive damages.

2    ### FIFTH CAUSE OF ACTION

3    ### FOR TORTIOUS INTERFERENCE WITH

4    ### PROSPECTIVE ECONOMIC ADVANTAGE

5    #### (Against Defendant Aldava)

6    71.    RHI hereby incorporates by reference and realleges each of the allegations contained

7    in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

8    72.    RHI has economic relationships with its clients, relationships that are designed to

9    generate revenues to RHI.

10   73.    Aldava was aware of the economic relationships between RHI and its clients.

11   Notwithstanding that fact, she intentionally and wrongfully sought to disrupt these relationships by

12   committing independently wrongful acts. Specifically, Aldava, while still employed by RHI, led one

13   of RHI's biggest clients to believe that RHI was no longer interested in doing business with that

14   client.

15   74.    The economic relationships between RHI and its clients actually were disrupted. RHI

16   did not discover Aldava's unlawful interference until after her employment had been terminated. It

17   required extensive conversations between the client and several RHI's management personnel to

18   restore the relationship with that client.

19   75.    Aldava has also usurped opportunities with clients and candidates with whom she

20   worked at RHI to obtain business for Ledgent.

21   76.    RHI has been irreparably injured and has suffered damages in an amount to be proven

22   at the time of trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other

23   available remedies, monetary damages and preliminary and permanent injunctive relief against

24   Aldava.

25   77.    The aforementioned acts of Aldava were willful, oppressive, malicious, and/or

26   fraudulent, thereby justifying an award of punitive damages.

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13

**SIXTH CAUSE OF ACTION**

**FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE**

**ECONOMIC ADVANTAGE (At-Will Employment)**

**(Against Defendant Aldava)**

78.     RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

79.     RHI has economic relationships with its employees, relationships that are designed to generate revenues to RHI.

80.     Aldava was aware of the economic relationships between RHI and its employees. Notwithstanding that fact, she intentionally and wrongfully sought to disrupt these relationships by using RHI's confidential information to gain unfair and improper competitive advantages that allowed her future employer to identify, contact, solicit, and/or make successful offers of employment to RHI's key employees.

81.     The economic relationships between RHI and its employees actually were disrupted as Sherman and Greenwood terminated their employment with RHI and went to work for Ledgent.

82.     As a proximate result of Aldava's misconduct, RHI's economic relations with certain clients have also been disrupted.  RHI has been irreparably injured and has suffered damages in an amount to be proven at the time of trial.

83.     The aforementioned acts of Aldava were willful, oppressive, malicious, and/or fraudulent, thereby justifying an award of punitive damages.

**SEVENTH CAUSE OF ACTION**

**FOR VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125**

**(Against Defendant Ainsworth)**

84.     RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

85.     The Lanham Act, codified in relevant part at 15 U.S.C. § 1125, prohibits the use in commerce of "any word, term, name, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . with

2  another person, or as to the origin, sponsorship, or approval . . . by another person" of the services

3  offered.

4      86.    Some of the actions of Ainsworth as alleged herein violated the prohibitions of the

5  Lanham Act.  For example, after Ainsworth went to work for a competitor of RHI, he contacted a

6  former RHI client with which he had placed a candidate while working for RHI. Without telling the

7  former client that he now was working for another company, Ainsworth took on a new assignment

8  for that client.

9      87.    Ainsworth's actions caused confusion and mistake and deceived as to his affiliation

10  with RHI and as to the origin of the services he offered.

11      88.    As a proximate result of Ainsworth's misconduct, RHI has been irreparably injured

12  and has suffered damages in an amount to be proven at the time of trial. Because its remedy at law is

13  inadequate, RHI also seeks, in addition to any other available remedies, monetary damages and

14  preliminary and permanent injunctive relief against Ainsworth.

15  **EIGHTH CAUSE OF ACTION**

16  **FOR BREACH OF WRITTEN CONTRACT**

17  **(Against Defendant Ainsworth)**

18      89.    RHI hereby incorporates by reference and realleges each of the allegations contained

19  in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

20      90.    As alleged herein, Ainsworth entered into an Employment Agreement with RHI,

21  agreeing to comply with the terms therein.

22      91.    RHI has performed all conditions, covenants, and promises required on its part to be

23  performed in accordance with the terms and conditions of the Employment Agreement, except for

24  those conditions and covenants for which performance by RHI was excused.

25      92.    Ainsworth's actions as alleged above breached the conditions, covenants, promises,

26  and obligations required of his Employment Agreement, including:  (1) he repeatedly breached

27  Paragraph 8 by disclosing and using RHI's confidential business information to identify, contact,

28  and solicit RHI's clients with whom he had worked while employed by RHI, including allowing at

*Hunton & Williams LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

1   least one client to think that he still continued to work for RHI; (2) he breached Paragraph 11 by

2   soliciting Danielle Healis; and (3) he breached Paragraph 13 by touting his RHI experience and

3   background for his new employer's benefit.

4        93.    Ainsworth acknowledged in Section 14 of his Employment Agreement that in the

5   event of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI

6   would be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a

7   proximate result of the above detailed breaches, RHI has in fact been irreparably injured and has

8   suffered damages in an amount to be determined at trial.   Because its remedy at law is inadequate,

9   RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive

10   relief against Ainsworth.

## NINTH CAUSE OF ACTION

### FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant Ainsworth)

14        94.    RHI hereby incorporates by reference and realleges each of the allegations contained

15   in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

16        95.    The employment agreement between RHI and Ainsworth contained an implied

17   covenant of good faith and fair dealing. This implied covenant obligated Ainsworth to refrain from

18   doing any act that would deprive RHI of the benefits of the agreement or that would impede RHI

19   from performing any or all of the conditions of the agreement that it agreed to perform.

20        96.    Ainsworth's misconduct as described herein breached the implied covenant of good

21   faith and fair dealing. These wrongful acts were committed in bad faith with the intent and the result

22   that RHI was deprived of the benefits of the employment agreement.

23        97.    As a proximate result of these breaches, RHI has been irreparably injured and has

24   suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate,

25   RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive

26   relief against Ainsworth.

27

28

*Hunton & Williams LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## TENTH CAUSE OF ACTION

### FOR TORTIOUS INTERFERENCE WITH

### PROSPECTIVE ECONOMIC ADVANTAGE

#### (Against Defendant Ainsworth)

98.     RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

99.     RHI has economic relationships with its clients, relationships that are designed to generate revenues to RHI.

100.    Ainsworth was aware of the economic relationships between RHI and its clients. Notwithstanding that fact, he intentionally and wrongfully sought to disrupt these relationships by committing independently wrongful acts. For example, Ainsworth used RHI's confidential business information to gain unfair and improper competitive advantages that allowed him to identify, contact, and solicit RHI clients with which he had worked while working for RHI and regarding open positions about which he had learned while working for RHI.

101.    The economic relationships between RHI and its clients actually were disrupted, as Ainsworth was able to exploit his knowledge of RHI's confidential business information to convince RHI's clients to give their business to Ainsworth's new employer.

102.    As a proximate result of Ainsworth's misconduct, RHI has been irreparably injured and has suffered damages in an amount to be proven at the time of trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedies, monetary damages and preliminary and permanent injunctive relief against Ainsworth.

103.    The aforementioned acts of Ainsworth were willful, oppressive, malicious and fraudulent, thereby justifying an award of punitive damages.

## ELEVENTH CAUSE OF ACTION

### FOR VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125

#### (Against Defendant Schweitzer)

104.    RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

1    105.    The Lanham Act, codified in relevant part at 15 U.S.C. § 1125, prohibits the use in

2    commerce of "any word, term, name, . . . or any false designation of origin, false or misleading

3    description of fact, or false or misleading representation of fact, which (A) is likely to cause

4    confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . with

5    another person, or as to the origin, sponsorship, or approval . . . by another person" of the services

6    offered.

7    106.    Some of the actions of Schweitzer as alleged herein violated the prohibitions of the

8    Lanham Act. Specifically, after Schweitzer had gone to work for a competitor of RHI, she contacted

9    and attempted to solicit business from a former RHI client while purporting to still be employed by

10   RHI. Moreover, she advertises RHI on her LinkedIn webpage as her current employer.

11   107.    Schweitzer's action caused confusion and mistake and deceived as to her affiliation

12   with RHI and as to the origin of the services she offered.

13   108.    As a proximate result of Schweitzer's misconduct, RHI has been irreparably injured

14   and has suffered damages in an amount to be proven at the time of trial. Because its remedy at law is

15   inadequate, RHI also seeks, in addition to any other available remedies, monetary damages and

16   preliminary and permanent injunctive relief against Schweitzer.

17                        **TWELFTH CAUSE OF ACTION**

18                    **FOR BREACH OF WRITTEN CONTRACT**

19                        **(Against Defendant Schweitzer)**

20   109.    RHI hereby incorporates by reference and realleges each of the allegations contained

21   in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

22   110.    As alleged herein, Defendant Schweitzer entered into an Employment Agreement

23   with RHI, agreeing to comply with the terms therein.

24   111.    RHI has performed all conditions, covenants, and promises required on its part to be

25   performed in accordance with the terms and conditions of the Employment Agreement, except for

26   those conditions and covenants for which performance by RHI was excused.

27   112.    Schweitzer's actions as alleged above breached the conditions, covenants, promises,

28   and obligations required of her Employment Agreement, including:  (1) she breached Paragraph 8 by

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

18

COMPLAINT

disclosing and using RHI's confidential business information to solicit business from an RHI client with whom she had worked while employed by RHI; and (2) she breached Paragraph 13 by purporting to still work for RHI while soliciting business from an RHI client with which she had worked while employed by RHI and by touting her RHI experience and background for her new employer's benefit.

113.   Schweitzer acknowledged in Section 14 of her Employment Agreement that in the event of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI would be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a proximate result of the above detailed breaches, RHI has in fact been irreparably injured and has suffered damages in an amount to be determined at trial.   Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Schweitzer.

## THIRTEENTH CAUSE OF ACTION

### FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

#### (Against Defendant Schweitzer)

114.   RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

115.   The employment agreement between RHI and Schweitzer contained an implied covenant of good faith and fair dealing. This implied covenant obligated Schweitzer to refrain from doing any act that would deprive RHI of the benefits of the agreement or that would impede RHI from performing any or all of the conditions of the agreement that it agreed to perform.

116.   Schweitzer's misconduct as described herein breached the implied covenant of good faith and fair dealing. These wrongful acts were committed in bad faith with the intent and the result that RHI was deprived of the benefits of the employment agreement.

117.   As a proximate result of these breaches, RHI has been irreparably injured and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Schweitzer.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### FOURTEENTH CAUSE OF ACTION

### FOR BREACH OF WRITTEN CONTRACT

### (Against Defendant Hernandez)

118.   RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

119.   As alleged herein, Hernandez entered into an Employment Agreement with RHI, agreeing to comply with the terms therein.

120.   RHI has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Employment Agreement, except for those conditions and covenants for which performance by RHI was excused.

121.   Hernandez breached the conditions, covenants, promises, and obligations contained in his Employment Agreement, including Paragraph 11 by soliciting Danielle Healis, an RHI employee with whom he had worked, to leave employment with RHI and work for a competitor  and (2) he breached Paragraph 13 by touting her RHI experience and background for her new employer's benefit.

122.   Hernandez acknowledged in Section 14 of his Employment Agreement that in the event of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI would be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a proximate result of the above detailed breaches, RHI has in fact been irreparably injured and has suffered damages in an amount to be determined at trial.   Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Hernandez.

### FIFTEENTH CAUSE OF ACTION

### FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant Hernandez)

123.   RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

124.   The employment agreement between RHI and Hernandez contained an implied

covenant of good faith and fair dealing. This implied covenant obligated Hernandez to refrain from doing any act that would deprive RHI of the benefits of the agreement or that would impede RHI from performing any or all of the conditions of the agreement that it agreed to perform.

125.    Hernandez's misconduct as described herein breached the implied covenant of good faith and fair dealing. For example, Hernandez, while employed by RHI, assisted a former RHI employee in soliciting Danielle Healis, a current employee, to go work for a competitor. These wrongful acts were committed in bad faith with the intent and the result that RHI was deprived of the benefits of the employment agreement.

126.    As a proximate result of these breaches, RHI has been irreparably injured and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Hernandez.

## SIXTEENTH CAUSE OF ACTION

## FOR BREACH OF FIDUCIARY DUTY

### (Against Defendant Sherman)

127.    RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

128.    Defendant Sherman was a fiduciary of RHI by virtue of her leadership and supervisory position at RHI—Division Director—and the trust and confidence RHI had placed in her.

129.    As a fiduciary, Sherman owed fiduciary duties to RHI to protect RHI's interests, to fully and loyally perform her duties at RHI, and not to do anything contrary to the interests of RHI or that would injure RHI or that would deprive RHI of profit or advantage that her skills and abilities might properly bring to RHI or that RHI might make in the reasonable and lawful exercise of its powers.

130.    Sherman was given and had access to information about the strengths and weaknesses, compensation packages and benefits, and particular needs and requirements of the RHI employees she supervised. She was also given and had access to RHI's confidential and proprietary

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  information and business opportunities in accordance with the terms of her employment with RHI.

2  Sherman voluntarily accepted the trust and confidence RHI had placed in her and in her integrity.

3      131.    Sherman breached her fiduciary duties to RHI, allowing a competitor to compete

4  unfairly with RHI and to damage RHI's business. To achieve these goals, Sherman breached her

5  fiduciary duties to RHI by, among other things: (1) spending large amount of time away from the

6  office and failing to develop RHI's business; and (2) participating in a coordinated scheme to resign.

7      132.    As the direct and proximate result of Sherman's misconduct, RHI has suffered harm

8  in an amount to be proven at trial.

9      133.    The aforementioned acts of Sherman were willful, oppressive, malicious and/or

10  fraudulent, thereby justifying an award of punitive damages.

## SEVENTEENTH CAUSE OF ACTION

### FOR BREACH OF WRITTEN CONTRACT

#### (Against Defendant Sherman)

14      134.    RHI hereby incorporates by reference and realleges each of the allegations contained

15  in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

16      135.    As alleged herein, Defendant Sherman entered into an Employment Agreement with

17  RHI, agreeing to comply with the terms therein.

18      136.    RHI has performed all conditions, covenants, and promises required on its part to be

19  performed in accordance with the terms and conditions of the Employment Agreement, except for

20  those conditions and covenants for which performance by RHI was excused.

21      137.    Sherman's actions as alleged above breached the conditions, covenants, promises,

22  and obligations required of her Employment Agreement, including: (1) she breached Paragraph 4 by

23  spending large amounts of time out of the office in the month before she left and not devoting her

24  best efforts to developing RHI's business; (2) she breached Paragraph 8 by disclosing and using

25  RHI's confidential business information to solicit business from RHI clients and candidates with

26  whom she had worked while employed by RHI; and (3) she breached Paragraph 13 by touting her

27  RHI experience and background for her new employer's benefit.

28      138.    Sherman acknowledged in Section 14 of her Employment Agreement that in the event

of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI would be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a proximate result of the above detailed breaches, RHI has in fact been irreparably injured and has suffered damages in an amount to be determined at trial.   Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Sherman.

## EIGHTEENTH CAUSE OF ACTION

### FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

#### (Against Defendant Sherman)

139.   RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

140.   The employment agreement between RHI and Sherman contained an implied covenant of good faith and fair dealing. This implied covenant obligated Sherman to refrain from doing any act that would deprive RHI of the benefits of the agreement or that would impede RHI from performing any or all of the conditions of the agreement that it agreed to perform.

141.   Sherman's misconduct as described herein breached the implied covenant of good faith and fair dealing. For example, Sherman participated in a joint resignation and failed to develop RHI's business during the month leading up to that resignation. These wrongful acts were committed in bad faith with the intent and the result that RHI was deprived of the benefits of the employment agreement.

142.   As a proximate result of these breaches, RHI has been irreparably injured and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Sherman.

## NINETEENTH CAUSE OF ACTION

### FOR BREACH OF WRITTEN CONTRACT

#### (Against Defendant Greenwood)

143.   RHI hereby incorporates by reference and realleges each of the allegations contained

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

23
COMPLAINT

1    in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

2          144.   As alleged herein, Defendant Greenwood entered into an Employment Agreement

3    with RHI, agreeing to comply with the terms therein.

4          145.   RHI has performed all conditions, covenants, and promises required on its part to be

5    performed in accordance with the terms and conditions of the Employment Agreement, except for

6    those conditions and covenants for which performance by RHI was excused.

7          146.   Greenwood's actions as alleged above breached the conditions, covenants, promises,

8    and obligations required of her Employment Agreement, including:  (1) she breached Paragraph 4 by

9    spending large amounts of time out of the office in the month before she left and not devoting her

10   best efforts to developing RHI's business; and (2) she breached Paragraph 8 by disclosing and using

11   RHI's confidential business information to solicit business from an RHI client with whom she had

12   worked while employed by RHI.

13         147.   Greenwood acknowledged in Section 14 of her Employment Agreement that in the

14   event of an actual or threatened breach of the covenants set forth in Sections 9, 10, 11, and 13, RHI

15   would be irreparably harmed and RHI's remedy at law would be inadequate.   Moreover, as a

16   proximate result of the above detailed breaches, RHI has in fact been irreparably injured and has

17   suffered damages in an amount to be determined at trial.    Because its remedy at law is inadequate,

18   RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive

19   relief against Greenwood.

20                        **TWENTIETH CAUSE OF ACTION**

21         **FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

22                          **(Against Defendant Greenwood)**

23         148.   RHI hereby incorporates by reference and realleges each of the allegations contained

24   in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

25         149.   The employment agreement between RHI and Greenwood contained an implied

26   covenant of good faith and fair dealing. This implied covenant obligated Greenwood to refrain from

27   doing any act that would deprive RHI of the benefits of the agreement or that would impede RHI

28   from performing any or all of the conditions of the agreement that it agreed to perform.

*Hunton & Williams LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

24
COMPLAINT

150.    Greenwood's misconduct as described herein breached the implied covenant of good faith and fair dealing. Specifically, Greenwood participated in a joint resignation and failed to develop RHI's business during the month leading up to that resignation. These wrongful acts were committed in bad faith with the intent and the result that RHI was deprived of the benefits of the employment agreement.

151.    As a proximate result of these breaches, RHI has been irreparably injured and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Greenwood.

### TWENTY-FIRST CAUSE OF ACTION

### FOR VIOLATION OF CALIFORNIA BUSINESS

### & PROFESSIONS CODE §§ 17200 *ET SEQ.*

### (Against ALL Defendants, including DOES 1 - 20)

152.    RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

153.    Defendants Ainsworth, Aldava, Greenwood, Hernandez, Schweitzer, Sherman, and other as of yet unnamed defendants, willfully undertook unfair acts as alleged above to harm RHI, with knowledge of and in disregard of RHI's rights, and with the intention of causing harm to RHI and benefit to themselves.

154.    Defendants' conduct as alleged herein constitutes "unfair," "unlawful," and "fraudulent" business acts or practices in violation of California Business & Professions Code §§ 17200 et seq.

155.    As the direct and proximate result of Defendants' violations of §§ 17200 et seq., RHI has suffered irreparable injury. Because its remedy at law is inadequate, RHI seeks preliminary and permanent injunctive relief to protect its confidential business information and other legitimate business interests.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TWENTY-SECOND CAUSE OF ACTION**

FOR UNFAIR COMPETITION

**(Against ALL Defendants, including DOES 1 - 20)**

156.   RHI hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs as though fully set forth in their entirety in this claim for relief.

157.   As more fully described above, Defendants have been engaged in unfair competition.

158.   As a proximate result of the Defendants' conduct, RHI has been irreparably injured and has suffered damages in an amount to be proven at the time of trial. Because its remedy at law is inadequate, RHI also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Defendants as described herein.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff Robert Half International Inc. prays for judgment against Defendants Eric Shane Ainsworth, Lisa Lynn Aldava, Serena Mai Greenwood, Ruben D. Hernandez, Jr., Deana Schweitzer, Catherine S. Sherman, and other as of yet unnamed Doe defendants, as follows:

A.   For damages, including restitution and compensatory, consequential, punitive, and exemplary damages in an amount to be proved at trial and as permitted by law;

B.   For preliminary and permanent injunctive relief against Defendants and their agents, servants, assigns, and all those acting in active concert or participation with them from further unfair and unlawful acts described above, including disclosing or misusing RHI's confidential information to solicit clients, candidates, and/or employees, from misusing RHI's name, and from mischaracterizing their affiliation with RHI;

C.   For prejudgment and post-judgment interest at the rate authorized by law;

D.   For reasonable attorneys' fees where authorized by statute and/or contract;

E.   For costs of suit incurred herein; and

\\\

\\\

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1     F.     For such other and further relief as this Court deems just and proper.

2    DATED: September 22, 2014         HUNTON & WILLIAMS LLP

By: _____

Roland M. Juarez
Y. Anna Suh
Attorneys for Plaintiff
ROBERT HALF INTERNATIONAL INC.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

27
COMPLAINT

1

## JURY TRIAL DEMAND

2      Plaintiff Robert Half International Inc. hereby demands a trial by jury on triable issues of

3  fact.

4

5  DATED:  September 22, 2014                    HUNTON & WILLIAMS LLP

6

7                                          By: _____

8                                                Roland M. Juarez
                                                 Y. Anna Suh
9                                                Attorneys for Plaintiff
                                                 ROBERT HALF INTERNATIONAL INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

28

COMPLAINT

# EXHIBIT A



Robert Half International
A Global Leader in Professional Services Since 1948

<u>Employment Agreement</u>

This agreement is made as of March 12_____, 2013___, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and Eric S. Ainsworth_____ ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries, divisions and affiliates (Employer and its subsidiaries, divisions, and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1.     <u>Employment.</u>   Employee  shall  receive  an  initial  bi-weekly  salary  of $ 1,280.80_____.  You will be paid biweekly on every other Friday according to the company's payroll schedule.  You will be classified as non-exempt for a limited period of time while you

undergo training in the Success Through Excellence Program. As a non-exempt employee, your pay will depend on how many hours you work. For example, if you work 50 hours each week during a bi-weekly pay period, your total wages would be approximately $ 1,761.20            for that pay period. Annualized your pay would be about $ 44,600.00            per year.

These numbers are based on regular pay for 8 hours per day, 40 hours per week at $ 16.01            per hour, plus 10 overtime hours per week at an overtime rate of $ 24.02            per hour. Please note that you may work up to 10 hours of overtime per week without management's prior approval (any overtime hours over 10/week must have prior approval). You may of course work more or less or no overtime in any given pay period and your pay will vary accordingly.

    2.    Termination.   **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.**  Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

    3.    Duties.  Employee shall have such duties as may be assigned from time to time by Employer.  It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel.  Employee shall have and use such title as Employer shall direct from time to time.

    This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned.  A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

    4.    Performance of Duties.  During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent.  Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time.  Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies.  This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office for which Employee has rendered services or over which Employee has exercised any form of supervisory authority.

    Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of

printed matter, photographs, audio tape, video tape, computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5.      Compensation. As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a salary as set forth in Section 1. In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time. Employee can have no expectations regarding such plans or their continuation. All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6.      Personnel Policies, Practices and Procedures; Employer's Rights. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason. In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise. It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment. Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7.      Definitions. Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies for which Employee has performed work, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.  **Disclosure or Misuse of Confidential Information.** Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9.  **Restrictive Covenant.** In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10.  **Non-solicitation of Customers.** In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not use or disclose any of Employer's trade secrets or other confidential information, to directly or

indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11.     Non-solicitation of Other Employees.     In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, at any time or for any reason, either alone or jointly, with or on behalf of others, whether as principal, partner, agent, representative, equity holder, director, employee, consultant or otherwise, Solicit any Other Employee to leave the employ of the RHI Companies, either for Employee's own account or for any other person, firm or company. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.     Intent. The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.     Wrongful Use of Employer's Name.     After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials (electronic or otherwise) that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.     The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14.     Injunction.  In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15.    Intellectual Property.  Employee agrees that all rights to inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, presentations, and any other intellectual property conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works"), whether or not during scheduled work hours, alone or with others, during the term of employment which (a) relate in any manner at the time of conception or reduction to practice to Employer's business or the actual or demonstrably demonstrated anticipated research or development of the Employer, (b) result from any work performed by the Employee on behalf of Employer, or (c) were created using the resources or trade secret information of Employer shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer.  Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents.  Employee's agreement to assign to Employer any rights as set forth in this Section shall not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870 or other similar state statute or law.  The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16.    Company Resources and Privacy.  Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources").  Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium.  Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient.  Employer's foregoing right to monitor employee's communications cannot be waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17.    Waiver.  Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18.    Notice.  All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail.  Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee.  Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19.     Severability.   The provisions of this Agreement are severable.  If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions.  Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid.  Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area.  The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20.     Limitation on Claims.  Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21.     Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules.  In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22.     Entire Agreement.  This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof.  No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought.  No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment agreement between Employer and Employee or modify the terms of this Agreement in any way.

[Agreement continues on next page]

23. <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. <u>Third Party Beneficiary.</u> Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

ROBERT HALF INTERNATIONAL INC.

By _____

Title _Branch Manager_____

By: _____
      Employee

## Employment Agreement

This agreement is made as of <u>October 19</u>, <u>2009</u>, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and <u>Lisa Aldava</u> ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries and affiliates (Employer and its subsidiaries and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1.    <u>Employment</u>.  Employer hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions hereinafter set forth.  Employee

shall receive an initial monthly salary of $ 5416.66   .  Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder.  Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

2.    Termination.  THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.  Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3.    Duties.  Employee shall have such duties as may be assigned from time to time by Employer.  It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel.  Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned.  A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4.    Performance of Duties.  During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent.  Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time.  Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies.  This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape,

Revised September 9, 2008                                2

computer disk, electronic transmission, or otherwise.  Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5.  Compensation.  As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a monthly salary as set forth in Section 1.  In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time.  Employee can have no expectations regarding such plans or their continuation.  All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6.  Personnel Policies, Practices and Procedures; Employer's Rights. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason.  In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise.  It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment.  Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7.  Definitions.  Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

Revised September 9, 2008                              3

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.    Disclosure or Misuse of Confidential Information.  Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.  Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets.  Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control.  The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9.  Restrictive Covenant.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office.  The provisions of this

Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10.   Non-solicitation of Customers.   In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. Such restriction on Soliciting or performing services for Customers shall apply regardless of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11.   Non-solicitation of Other Employees.   In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.   Intent.   The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.   Wrongful Use of Employer's Name.   After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14.   <u>Injunction.</u>  In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15.   <u>Intellectual Property.</u>  Employee agrees that all inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, and presentations, conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works") shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer. Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16.   <u>Company Resources and Privacy.</u>  Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources"). Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium. Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient. Employer's foregoing right to monitor employee's communications cannot be

waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17.   Waiver.  Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18.   Notice.  All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19.   Severability.  The provisions of this Agreement are severable.  If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid.  Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area.  The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20.   Limitation on Claims.  Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21.   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules.  In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22.   Entire Agreement.  This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof.  No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought.  No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment

Revised September 9, 2008                    7

agreement between Employer and Employee or modify the terms of this Agreement in any way.

23. <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. <u>Arbitration</u>. Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA"). Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the California Fair Employment and Housing Act (for California Employees), and comparable equal opportunity statutes for employees in other states. However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration. This Agreement shall be governed by the Federal Arbitration Act ("FAA"). A neutral and impartial arbitrator shall be chosen by mutual agreement of the parties; however, if the parties are unable to agree upon an arbitrator within a reasonable period of time, then a neutral and impartial arbitrator shall be appointed in accordance with the AAA Rules. The arbitrator shall apply the same substantive law, with the same statutes of limitations and remedies, that would apply if the claims were brought in a court of law. The arbitrator shall also prepare a written decision containing the essential findings and conclusions on which the decision is based. The costs and fees of the arbitrator shall be borne by the Employer. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. Each party shall pay its own costs and attorneys' fees, unless a party prevails on a statutory claim and the statute provides that the prevailing party is entitled to payment of its attorneys' fees. In that case, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party as provided by law. THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

25. <u>Third Party Beneficiary</u>. Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the date first above written.

ROBERT HALF INTERNATIONAL INC.

By _____

Title  Director of Financial Services
_____

_____
Employee

## Employment Agreement

This agreement is made as of October 14 , 2010 , by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and Serena Greenwood ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries and affiliates (Employer and its subsidiaries and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1.    Employment. Employer hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions hereinafter set forth. Employee

shall receive an initial monthly salary of $ 3750_____.  Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder.  Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

    2.   Termination.  **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.**  Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

    3.   Duties.  Employee shall have such duties as may be assigned from time to time by Employer.  It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel.  Employee shall have and use such title as Employer shall direct from time to time.

    This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned.  A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

    4.   Performance of Duties.  During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent.  Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time.  Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies.  This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office over which Employee has exercised any form of supervisory authority.

    Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape,

computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5. <u>Compensation</u>. As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a monthly salary as set forth in Section 1. In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time. Employee can have no expectations regarding such plans or their continuation. All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6. <u>Personnel Policies, Practices and Procedures; Employer's Rights</u>. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason. In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise. It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment. Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7. <u>Definitions</u>. Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.    Disclosure or Misuse of Confidential Information. Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9. Restrictive Covenant. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office. The provisions of this

Revised September 9, 2008                    4

Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10. <u>Non-solicitation of Customers</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. Such restriction on Soliciting or performing services for Customers shall apply regardless of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11. <u>Non-solicitation of Other Employees</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12. <u>Intent</u>. The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13. <u>Wrongful Use of Employer's Name</u>. After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

Revised September 9, 2008                     5

14.   Injunction.  In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood.  Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law.  Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have.  The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15.   Intellectual Property.  Employee agrees that all inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, and presentations, conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works") shall be the sole and complete property of Employer, whether as a work made for hire or otherwise.  Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer.  Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer.  Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights.  Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents.  The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16.   Company Resources and Privacy.  Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources").  Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium.  Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient.  Employer's foregoing right to monitor employee's communications cannot be

waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17. <u>Waiver</u>. Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18. <u>Notice</u>. All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19. <u>Severability</u>. The provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid. Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area. The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20. <u>Limitation on Claims</u>. Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules. In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22. <u>Entire Agreement</u>. This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof. No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought. No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment

agreement between Employer and Employee or modify the terms of this Agreement in any way.

23. <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. <u>Arbitration</u>. Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA"). Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the California Fair Employment and Housing Act (for California Employees), and comparable equal opportunity statutes for employees in other states. However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration. This Agreement shall be governed by the Federal Arbitration Act ("FAA"). A neutral and impartial arbitrator shall be chosen by mutual agreement of the parties; however, if the parties are unable to agree upon an arbitrator within a reasonable period of time, then a neutral and impartial arbitrator shall be appointed in accordance with the AAA Rules. The arbitrator shall apply the same substantive law, with the same statutes of limitations and remedies, that would apply if the claims were brought in a court of law. The arbitrator shall also prepare a written decision containing the essential findings and conclusions on which the decision is based. The costs and fees of the arbitrator shall be borne by the Employer. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. Each party shall pay its own costs and attorneys' fees, unless a party prevails on a statutory claim and the statute provides that the prevailing party is entitled to payment of its attorneys' fees. In that case, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party as provided by law. THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

25. <u>Third Party Beneficiary</u>. Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the date first above written.

ROBERT HALF INTERNATIONAL INC.

By _____

Title  Branch Manager

_____
Employee



Robert Half International
A Global Leader In Professional Services Since 1948

Employment Agreement

This agreement is made as of July 23 _____, 2013 ___, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and Ruben D. Hernandez Jr _____ ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries, divisions and affiliates (Employer and its subsidiaries, divisions, and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1.    Employment.    Employee shall receive an initial bi-weekly salary of $ 1,440.00 _____.  You will be paid biweekly on every other Friday according to the company's payroll schedule.  You will be classified as non-exempt for a limited period of time while you

undergo training in the Success Through Excellence Program. As a non-exempt employee, your pay will depend on how many hours you work. For example, if you work 50 hours each week during a bi-weekly pay period, your total wages would be approximately $ 1,980.20 _____ for that pay period. Annualized your pay would be about $ 50,140.00 _____ per year.

These numbers are based on regular pay for 8 hours per day, 40 hours per week at $ 18.00 _____ per hour, plus 10 overtime hours per week at an overtime rate of $ 27.01 _____ per hour. Please note that you may work up to 10 hours of overtime per week without management's prior approval (any overtime hours over 10/week must have prior approval). You may of course work more or less or no overtime in any given pay period and your pay will vary accordingly.

2.  Termination. **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.** Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3.  Duties. Employee shall have such duties as may be assigned from time to time by Employer. It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel. Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned. A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4.  Performance of Duties. During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent. Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time. Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies. This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office for which Employee has rendered services or over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of

printed matter, photographs, audio tape, video tape, computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5.    Compensation.  As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a salary as set forth in Section 1.  In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time.  Employee can have no expectations regarding such plans or their continuation.  All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6.    Personnel Policies, Practices and Procedures; Employer's Rights.   Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason.  In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise.  It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment.  Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7.    Definitions.  Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies for which Employee has performed work, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.     <u>Disclosure or Misuse of Confidential Information</u>.  Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.  Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9.     <u>Restrictive Covenant.</u>  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office.  The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.  Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10.     <u>Non-solicitation of Customers</u>.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not use or disclose any of Employer's trade secrets or other confidential information, to directly or

indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11.     Non-solicitation of Other Employees.     In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, at any time or for any reason, either alone or jointly, with or on behalf of others, whether as principal, partner, agent, representative, equity holder, director, employee, consultant or otherwise, Solicit any Other Employee to leave the employ of the RHI Companies, either for Employee's own account or for any other person, firm or company. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.     Intent. The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.     Wrongful Use of Employer's Name.     After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials (electronic or otherwise) that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14.     Injunction. In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15.   <u>Intellectual Property</u>.  Employee agrees that all rights to inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, presentations, and any other intellectual property conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works"), whether or not during scheduled work hours, alone or with others, during the term of employment which (a) relate in any manner at the time of conception or reduction to practice to Employer's business or the actual or demonstrably demonstrated anticipated research or development of the Employer, (b) result from any work performed by the Employee on behalf of Employer, or (c) were created using the resources or trade secret information of Employer shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer.  Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents.  Employee's agreement to assign to Employer any rights as set forth in this Section shall not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870 or other similar state statute or law.  The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16.   <u>Company Resources and Privacy.</u>  Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources").   Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium.  Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient.  Employer's foregoing right to monitor employee's communications cannot be waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17.   <u>Waiver</u>.  Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18.   <u>Notice.</u>  All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail.  Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee.  Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19.   Severability.  The provisions of this Agreement are severable.  If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions.  Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid.  Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area.  The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20.   Limitation on Claims.  Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21.   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules.  In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22.   Entire Agreement.  This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof.  No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought.  No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment agreement between Employer and Employee or modify the terms of this Agreement in any way.

[Agreement continues on next page]

23. <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. <u>Third Party Beneficiary.</u> Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

ROBERT HALF INTERNATIONAL INC.

By _____

Title _____

By: _____
Employee



Robert Half International

A Global Leader in Professional Services Since 1948

## Employment Agreement

This agreement is made as of ___July 18___, ___2013___, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and ___Deanna Schweitzer___ ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries, divisions and affiliates (Employer and its subsidiaries, divisions, and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1.    Employment.  Employer hereby employs Employee and Employee hereby accepts

such employment upon the terms and conditions hereinafter set forth. Employee shall receive an initial bi-weekly salary of $ 2,153.85 _____. Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder. Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

2.    Termination.  **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.** Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3.    Duties. Employee shall have such duties as may be assigned from time to time by Employer. It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel. Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned. A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4.    Performance of Duties. During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent. Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time. Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies. This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office for which Employee has rendered services or over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape, computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's

employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5.    Compensation.  As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a monthly salary as set forth in Section 1.  In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time.  Employee can have no expectations regarding such plans or their continuation.  All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6.    Personnel Policies, Practices and Procedures; Employer's Rights.  Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason.  In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise.  It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment.  Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7.    Definitions.  Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies for which Employee has performed work, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted

inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.      Disclosure or Misuse of Confidential Information.  Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.  Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9.      Restrictive Covenant.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office.  The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.  Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10.      Non-solicitation of Customers.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not use or disclose any of Employer's trade secrets or other confidential information, to directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or

perform services for any Customer. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11.     Non-solicitation of Other Employees.    In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, at any time or for any reason, either alone or jointly, with or on behalf of others, whether as principal, partner, agent, representative, equity holder, director, employee, consultant or otherwise, Solicit any Other Employee to leave the employ of the RHI Companies, either for Employee's own account or for any other person, firm or company. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.     Intent.  The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.     Wrongful Use of Employer's Name.    After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials (electronic or otherwise) that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.   The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14.     Injunction.  In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15.   <u>Intellectual Property</u>.   Employee agrees that all rights to inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, presentations, and any other intellectual property conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works"), whether or not during scheduled work hours, alone or with others, during the term of employment which (a) relate in any manner at the time of conception or reduction to practice to Employer's business or the actual or demonstrably demonstrated anticipated research or development of the Employer, (b) result from any work performed by the Employee on behalf of Employer, or (c) were created using the resources or trade secret information of Employer shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer. Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents. Employee's agreement to assign to Employer any rights as set forth in this Section shall not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870 or other similar state statute or law. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16.   <u>Company Resources and Privacy</u>.   Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources").   Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium. Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient. Employer's foregoing right to monitor employee's communications cannot be waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17.   <u>Waiver</u>.   Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18.   <u>Notice.</u>   All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19.    Severability.  The provisions of this Agreement are severable.  If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions.  Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid.  Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area.  The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20.    Limitation on Claims.  Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules.  In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22.    Entire Agreement.  This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof.  No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought.  No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment agreement between Employer and Employee or modify the terms of this Agreement in any way.


[Agreement continues on next page]

otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes individually.

Consideration

The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

| Employee: | ROBERT HALF INTERNATIONAL INC. |
|---|---|
| Signature of Employee | Signature of Authorized Company Representative |
| Deanna Schweitzer | 8R RVP |
| Print Name of Employee | Title of Representative |
| 7/18/13 | 7/18/13 |
| Date | Date |

- 5 -

11-1-11

<u>Employment Agreement</u>

This agreement is made as of *August 3rd, 2011*, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and *Catherine Sherman* ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries and affiliates (Employer and its subsidiaries and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1. <u>Employment</u>.  Employer hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions hereinafter set forth.  Employee

shall receive an initial monthly salary of $ *3,750.ᵒᵒ*. Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder. Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

2.     Termination. **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON.** Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3.     Duties. Employee shall have such duties as may be assigned from time to time by Employer. It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel. Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned. A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4.     Performance of Duties. During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent. Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time. Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies. This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape,

computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5. Compensation. As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a monthly salary as set forth in Section 1. In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time. Employee can have no expectations regarding such plans or their continuation. All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6. Personnel Policies, Practices and Procedures; Employer's Rights. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason. In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise. It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment. Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7. Definitions. Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

Revised September 9, 2008                    3

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8.  <u>Disclosure or Misuse of Confidential Information</u>.  Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.  Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets.  Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control.  The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9.  <u>Restrictive Covenant</u>.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office.  The provisions of this

Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10.   Non-solicitation of Customers.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer.  Such restriction on Soliciting or performing services for Customers shall apply regardless of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11.   Non-solicitation of Other Employees.  In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.   Intent.  The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.   Wrongful Use of Employer's Name.  After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.  The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14. <u>Injunction</u>. In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15. <u>Intellectual Property</u>. Employee agrees that all inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, and presentations, conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works") shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer. Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16. <u>Company Resources and Privacy</u>. Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources"). Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium. Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient. Employer's foregoing right to monitor employee's communications cannot be

waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17.  Waiver.  Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18.  Notice.  All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19.  Severability.  The provisions of this Agreement are severable.  If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid.  Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area.  The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20.  Limitation on Claims.  Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21.  Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules.  In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22.  Entire Agreement.  This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof.  No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought.  No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment

agreement between Employer and Employee or modify the terms of this Agreement in any way.

23. <u>Successors and Assigns</u>.  This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives.  This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. <u>Arbitration</u>.  Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA").  Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the California Fair Employment and Housing Act (for California Employees), and comparable equal opportunity statutes for employees in other states.  However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration.  This Agreement shall be governed by the Federal Arbitration Act ("FAA").  A neutral and impartial arbitrator shall be chosen by mutual agreement of the parties; however, if the parties are unable to agree upon an arbitrator within a reasonable period of time, then a neutral and impartial arbitrator shall be appointed in accordance with the AAA Rules.  The arbitrator shall apply the same substantive law, with the same statutes of limitations and remedies, that would apply if the claims were brought in a court of law.  The arbitrator shall also prepare a written decision containing the essential findings and conclusions on which the decision is based.  The costs and fees of the arbitrator shall be borne by the Employer.  An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon.  Each party shall pay its own costs and attorneys' fees, unless a party prevails on a statutory claim and the statute provides that the prevailing party is entitled to payment of its attorneys' fees.  In that case, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party as provided by law.  THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

25. <u>Third Party Beneficiary</u>.  Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the date first above written.

ROBERT HALF INTERNATIONAL INC.

By _____

Title _____ Regional Vice President

_____
Employee