1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HALF INTERNATIONAL INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ERIC SHANE AINSWORTH, et al.,<br>                                    Defendants.<br>_____<br><br>AND RELATED COUNTERCLAIM. | Case No.:  14cv2481-WQH (DHB)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER [ECF No. 39]; AND**<br><br>**(2) GRANTING MOTION TO MODIFY SCHEDULING ORDER [ECF No. 43]** |

        Pending before the Court is non-party Roth Staffing Companies, L.P.'s ("Roth") motion for protective order filed on May 5, 2015.  (ECF No. 39.)  Plaintiff/Counter-Defendant Robert Half International, Inc. ("RHI") filed an opposition to Roth's motion on May 19, 2015, and Roth filed a reply to RHI's opposition on May 22, 2015.  (ECF Nos. 46, 47.)

        On June 2, 2015, the Court conducted a hearing on Roth's motion.  Appearing before the Court were: Clayton Hix, Esq., counsel for Roth and Defendants/Counterclaimants Eric Shane Ainsworth, Lisa Lynn Aldava, Serena Mai Greenwood, Ruben D. Hernandez, Jr., Deana H. Schweitzer, and Catherine S. Sherman (collectively, "Defendants"); and Roland

1

Juarez, Esq., and Mariana Aguilar, Esq., counsel for RHI.  The Court deferred ruling on Roth's motion for protective order to permit counsel to further meet and confer to attempt to resolve the issues raised in Roth's motion concerning RHI's subpoena to Roth.  (*See* ECF No. 52.)  Pursuant to the Court's order, on June 23, 2015 Roth and RHI filed a Joint Status Report outlining those aspects of the subpoena to which an agreement has been reached, and those aspects that remain in dispute.  (ECF Nos. 58, 59.)[1]

Having thoroughly considered the aforementioned documents, and for the reasons set forth below, *see* Part III(A), Roth's motion for protective order is **GRANTED in part** and **DENIED in part**.

In addition, pursuant to Local Civil Rule 16.2, the Honorable William Q. Hayes referred RHI's motion to amend the scheduling order (ECF No. 43) to the undersigned Magistrate Judge.  (*See* ECF No. 61 at 7:6-18.)  For the reasons set forth below, *see* Part III(B), RHI's motion to amend the scheduling order is **GRANTED**.

# I. BACKGROUND

RHI, a professional staffing services firm specializing in recruiting and placing temporary and permanent employees with clients or customers of RHI, brings this lawsuit against six of its former employees who are now employed by Roth, one of RHI's competitors.  Although Roth is not a named defendant in this case, RHI alleges in the First Amended Complaint that Roth has, over the course of several years, threatened to poach RHI's employees and "created a culture where its employees disregard laws and contractual obligations and the rules of fair competition all in an effort to damage RHI.

---

[1]     Roth and RHI's Joint Status Report redacts references to documents and deposition testimony designated as confidential under the Court's January 29, 2015 Protective Order. (ECF No. 21.)  In conjunction with the Joint Status Report, RHI filed an *ex parte* application to file under seal an unredacted copy of the Joint Status Report and supportive documents.   (ECF No. 56.)   Good cause appearing, RHI's *ex parte* application is **GRANTED**.  The following items shall be filed under seal: (1) the unredacted copy of the Joint Status Report; and (2) Exhibits Q and S to the Supplemental Declaration of Mariana Aguilar.

Roth has lured dozens of RHI employees, the number increasing dramatically in the last year, to Roth's Southern California offices."  (ECF No. 66 at ¶ 2.)  As against RHI's six former employees named as Defendants in this case, RHI alleges they have "engag[ed] in unfair, fraudulent, and unlawful competition from the moment they decided to leave RHI. They have purposefully deceived RHI clients, candidates, and employees in order to enrich themselves and Roth, and to damage RHI.  The Defendants have done so in ways that breached fiduciary duties, implied covenants, express contractual terms, and the law. These improper competitive tactics have enabled Roth's companies to compete for clients and customers at levels that would otherwise be unattainable without making the same amount of significant expenditures of time and resources made by RHI."  (*Id.* at ¶ 3.)

On April 7, 2015, RHI issued a subpoena to Roth, a non-party, commanding Roth to appear with certain documents at a May 6, 2015 deposition.  The subpoena contained 31 categories of deposition topics and 159 requests for documents.  RHI contends it intentionally set the deposition for May 6, 2015 to ensure it would have time following the deposition to assess whether to move to amend the Complaint by the May 13, 2015 deadline to seek leave to amend, as set forth in the Court's February 11, 2015 Scheduling Order.  (ECF No. 25.)

On April 15, 2015, counsel for Roth (and the Defendants/Counter-Claimants) sent RHI's counsel a letter requesting to meet and confer regarding certain categories and requests in the subpoena.  Counsel for RHI and Roth met in person on April 17, 2015.  Roth maintains that RHI's counsel agreed to narrow the scope of the subpoena but that RHI failed to do so prior to Roth's filing of its motion for protective order.  RHI contends Roth attempted to place the burden on RHI to suggest revisions to the subpoena and to address Roth's objections despite the general nature of those objections.

On April 20, 2015, Roth served formal objections to the subpoena, many of which were not addressed in the April 15 letter or the April 17 meet and confer.  RHI claims these objections caused confusion because it "was not certain which objections it was supposed to address—the objections in the prior letter to a portion of the subpoena or each and every

one of the objections served on April 20th."  (ECF No. 46 at 8:15-18.)

On May 1, 2015, Roth's counsel advised RHI's counsel that Roth would not be appearing at the deposition scheduled for May 6.  Roth proceeded to file the instant motion for protective order on May 4, 2015, despite some discussion between counsel about coordinating a joint briefing schedule.

Roth argues in its motion for protective order that RHI's subpoena, when viewed in its entirety, is grossly overbroad and unduly burdensome, particularly because Roth is a non-party entitled to extra protection from the Court.  Roth also contends the subpoena is improper because RHI is seeking information unrelated to this lawsuit for an "anticompetitive purpose," namely, to obtain confidential and proprietary documents from a key competitor in the marketplace, *i.e.*, Roth.  According to Roth, such information includes all of Roth's documents related to RHI, the Defendants and other former RHI employees, and Roth's business practices, clients, and candidates.[2]  Roth also argues that the subpoena improperly requests (1) irrelevant information regarding the solicitation of Roth's non-party employees and Roth's general business practices and operations; (2) all documents regarding Defendants' employment with Roth; (3) all documents regarding Roth's clients and employee candidates; and (4) information about all revenue generated by Defendants for Roth.  Roth concedes that it has some discoverable information in its possession, but Roth maintains that the scope of the subpoena is so burdensome that the entire subpoena should be quashed and RHI should be required to issue a new, narrowly-drawn subpoena.  Roth contends it cannot begin to comply with the subpoena until it knows whether it will be withdrawn, quashed, or limited.

RHI contends Roth has failed to comply with a lawfully served subpoena, failed to propose any solutions to RHI's counsel to address Roth's objections, and failed to satisfy

---

[2]    Roth also argued in its motion that defined terms in the subpoena included attorneys and, thus, implicated the attorney-client privilege and work product doctrine.  However, after further meet and confer efforts following the June 2, 2015 hearing, Roth and RHI have reached an agreement to resolve this issue.  (*See* ECF No. 58-1 at 2.)

its burden of showing that the subpoena should be quashed in its entirety. RHI further contends that the subpoena seeks relevant discovery, including documents and testimony concerning: (1) the solicitation of RHI's clients and candidates; (2) the recruitment and solicitation of RHI's employees, including Defendants; (3) information regarding Defendants' employment at Roth; (4) RHI's confidential information; (5) Roth's business practices, policies, and procedures pertinent to the claims in this case; and (6) damages. RHI contends it expressed during the Early Neutral Evaluation Conference "that it would be looking to investigate Roth with the possibility of adding the company as a defendant." (ECF No. 46 at 6:10-11.) RHI further contends discovery has implicated Roth as a source for documents responsive to RHI's discovery requests to Defendants, *e.g.*, Defendants directed RHI to seek certain documents from Roth. RHI responds to Roth's burden objection on grounds that Roth provides no evidence to support the objection. RHI also argues that the fact it competes with Roth in the marketplace does not immunize Roth from the discovery process. In sum, RHI contends that "Roth's participation in or ratification of . . . Defendants' acts has yet to be fully discovered and is a proper source of discovery in this case, regardless of whether Roth turns out to be a witness or another defendant." (*Id.* at 7:15-18.)

## II.  LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1).

Rule 26 authorizes the Court, upon a showing of good cause, to issue an order to "any person from whom discovery is sought . . . to protect [that] person from annoyance,

5

embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).  The Court's order may, among other things, forbid the discovery; "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters"; or "require[] that a trade secret, or other confidential research, development, or commercial information not be revealed, or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(A), (D), (G).

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." FED. R. CIV. P. 45(c)(1).  "On timely motion, the issuing court must quash or modify a subpoena that . . . fails to allow a reasonable time to comply [or] . . . subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(i), (iv).  In addition, the Court may quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(c)(3)(B)(i).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 U.S. Dist. LEXIS 119622, at *13 (N.D. Cal. Aug. 22, 2013) (citing *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-080082-LHK (PSG), 2012 U.S. Dist. LEXIS 76467, at *1 (N.D. Cal. June 1, 2012)).  "[I]f the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

"[T]he word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (citations omitted).  The Ninth Circuit "does not

favor unnecessarily burdening nonparties with discovery requests," and, as a result, "[n]on-parties deserve extra protection from the courts." *Kim v. Nuvasive, Inc.*, No. 11cv1370-DMS (NLS), 2011 U.S. Dist. LEXIS 96878, at *6 (S.D. Cal. Aug. 29, 2011) (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)); *see also* FED. R. CIV. P. 45(d)(2)(B)(ii) (court order compelling compliance with subpoena following objections by non-party "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.").

### III.  ANALYSIS

**A.    Roth's Motion for Protective Order**

As an initial matter, the Court considers Roth's request that the Court quash the subpoena in its entirety and force RHI to issue a new, narrowed subpoena.  The Court agrees with Roth that the subpoena, as issued, is overbroad and seeks information beyond the scope of discovery permissible under Rule 26.  Indeed, the subpoena seeks, in large part, discovery that goes beyond the claims or defenses of the parties, but to *potential* claims by RHI against Roth.  The Court does not find good cause under Rule 26(b)(1) to expand the scope of discovery to any matter relevant to the subject matter of this lawsuit. Rather, discovery should be limited to the claims and defenses of the parties.  Roth, as a non-party, is deserving of special protection from the Court, and the Court does not condone RHI's admitted attempt to utilize the subpoena process as a means to gather evidence against Roth in order to determine whether to name Roth as a defendant.  *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." (citations omitted)). As the Court advised RHI's counsel during the June 2 hearing, the information sought in the subpoena should be focused on RHI's claims against the named Defendants, and not on *potential* claims against Roth.  (*See* ECF No. 54 at 19:19-20:1 ("The Court does find that because Roth is a nonparty that the scope of discovery does need to be limited to the applicable claims and defenses in this action . . . [and] the subpoena needs to be

7

1    dramatically narrowed to a manageable level.").)

2        Notwithstanding the foregoing, the Court declines to quash the subpoena in its

3    entirety.  First, Roth admits it has discoverable information.  Second, counsel have worked

4    diligently to significantly narrow the scope of the subpoena by agreeing to numerous

5    limitations and exclusions.  (*See* ECF No. 58-1.)  The Court's goal of promoting efficiency

6    in the discovery process is fostered by addressing the remaining disputes rather than

7    requiring RHI to prepare a new subpoena, which would then likely be met with objections

8    from Roth, another discovery motion, and delayed completion of discovery.

9        Next, the Court considers the dispute regarding the definitions of "CLIENTS" and

10   "CANDIDATES."[3]  During the meet and confer process, RHI proposed that these terms

11   be limited to "the clients and candidates Defendants worked with, had contact with, or had

12   confidential information about (to the extent they remember) as part of their job duties at

13   RHI."  (ECF No. 58 at 3:18-21.)   Roth agrees this limitation satisfies its concerns.

14   However, RHI is now backtracking from its own proposal, arguing that by narrowing these

15   terms in such a manner, "RHI will not be able to determine whether Defendants are telling

16   the truth and/or have accurate recollections when they identified the former RHI clients

17   and candidates they are now working with at Roth.  RHI would be forced to rely solely on

18   Defendants' memories for the information regarding which RHI clients and candidates they

19   now work with at Roth—something that has already been an issue in the litigation."  (*Id.*

20   at 3:23-4:1.)  Rather than move forward with its own proposal, RHI instead proposes that

21   Roth create a list of the names and candidates each of the Defendants have worked with

22   and/or had contact with since joining Roth, and RHI would create a similar list of those

23

24   _____

25   [3]    The subpoena defines "CLIENT" as "any PERSON that any of the DEFENDANTS
     worked with, were privy to CONFIDENTIAL INFORMATION about, or for whom any
26   of the RHI offices performs or has performed services in the course of its business."  (ECF
     No. 46-2 at 7.)  The subpoena defines "CANDIDATE" as "any PERSON who was or is
27   registered for placement by an RHI office whether on a temporary, contract or direct hire
     basis."  (*Id.*)
28

clients and candidates Defendants worked with and/or had contact with while employed at RHI.  RHI further proposes these lists be designated for attorneys' eyes only pursuant to the Protective Order, and it contends this new proposal will permit RHI to determine which of its clients and candidates are now working with Defendants at Roth.  Roth opposes RHI's new proposal: "Roth does not agree to produce a complete client list in exchange for a limitation of these definitions.  If the Court is inclined to keep these broad definitions intact, Roth would prefer to attempt to comply with requests that include them in good faith."  (*Id.* at 2:23-26.)

The Court declines to adopt RHI's newest proposal requiring RHI and Roth to exchange client lists between counsel.  First, RHI's proposal is based on an unreasonable concern that Defendants cannot be trusted to comply with their discovery obligations.  The only evidence suggesting cause for concern is a single instance where one Defendant did not disclose in her interrogatory response a candidate with whom she worked while at Roth but later identified that candidate during her deposition.  However, the Court is not convinced this was anything more than an oversight, as this Defendant readily disclosed the candidate's name during the deposition.  It does not appear the interrogatory response was intended to deceive or provide an incomplete response.  And it may not have even been incomplete.  The interrogatory response was made on March 23, 2015, while the deposition did not occur until June 3, 2015.  Who's to say that this Defendant's work with this particular candidate did not commence after service of the interrogatory response?  The record before the Court does not indicate that RHI's counsel inquired into this potential inconsistency during the June 3 deposition, and the Court is not willing to assign an improper motive based on this ambiguous evidence.  Thus, RHI's entire proposal is based on an unfounded concern that Defendants cannot be trusted.  But the federal discovery rules are based on the understanding that a party will dutifully comply with discovery obligations, and there is always the potential that a party might not disclose all relevant, discoverable information. While there are procedures in place to promote compliance (*e.g.*, a party's duty to supplement disclosures and discovery responses, *see* FED. R. CIV. P. 26(e);

the Court's authority to impose sanctions for discovery abuses, *see* FED. R. CIV. P. 37), the Court is not willing to impose an additional burden on Roth, a non-party, as a means to ensure the thoroughness of Defendants' discovery responses.  Moreover, RHI's client list proposal would be subject to the same issue of trust.  That is, can RHI be confident that Roth's client list is complete?  RHI would be in the same position regardless of which proposal is adopted.  Thus, the Court finds that RHI's subpoena should be modified as suggested by RHI's initial proposal, namely, limiting the definitions of clients and candidates to "the clients and candidates Defendants worked with, had contact with, or had confidential information about (to the extent they remember) as part of their job duties at RHI."

The Court next considers the specific disputed deposition categories and document requests:

### 1.    Category Nos. 1-6

Category Nos. 1-6 seek information regarding the solicitation, recruitment, and/or hiring of Defendants by Roth, including information Roth had regarding Defendants' employment agreement with RHI.  (ECF No. 39-2 at 8-9.)  Following meet and confer efforts, RHI proposed modifying the categories to focus on the solicitation, recruitment, and/or hiring of Defendants *to* Roth.[4]  (ECF No. 58-2 at 2.)  RHI contends this modification will "focus on the Defendants and their solicitation to Roth, which could include solicitation by some or all of the Defendants themselves."  (ECF No. 58 at 5:8-9.)

Roth contends these requests, even as modified, are anticompetitive and not relevant to the parties' claims or defenses.  Roth maintains the issues in this case are whether Defendants (1) brought RHI confidential information to Roth and used it to unlawfully solicit RHI employer and applicant customers; and/or (2) unlawfully solicited RHI

---

[4]     Throughout this Order the Court will analyze RHI's categories and requests utilizing RHI's proposed limitations or modifications rather than the original, substantially overbroad language in the subpoena.

employees (in the specific instances identified in the complaint).  Roth contends Category Nos. 1-6, as well as Category Nos. 7-24, "can be boiled down to three requests for testimony on those issues," and that "Roth's recruiting practices and strategies are not at issue."  Specifically, Roth proposes the following categories in lieu of Category Nos. 1-24: (1) Defendants' possession of RHI's confidential information; (2) Defendants' use of RHI's confidential information to solicit its employer and applicant customers for the benefit of Roth; and (3) the specific instances of unlawful recruitment of RHI employees identified in the complaint.  (ECF No. 58-2 at 2.)

The Court agrees with Roth that these three proposed categories are proper matters for RHI to inquire into during Roth's deposition as they are directed towards RHI's claims against Defendants.  However, Roth's proposal is too narrow.  RHI should also be permitted to inquire into communications between each Defendant and Roth during the solicitation, recruitment, and/or hiring process.  The Court agrees with RHI that it is entitled "to know what Defendants told Roth during the hiring process about RHI's confidential information and employees—something Roth's proposal would not necessarily capture." (ECF No. 58 at 6:5-7.)  However, Roth's internal responses to this information are not relevant to the claims against Defendants, and RHI is therefore not entitled to inquire into this topic.

### 2.   Category Nos. 9-14

Category Nos. 9-14 seek information concerning the terms and conditions of Defendants' employment with Roth, including their respective compensation packages, job duties, offer letters, and employment agreements.  (ECF No. 39-2 at 9-10.)  During the meet and confer process, the parties relied on the same arguments they made in connection with Category Nos. 1-6.  In addition, RHI now argues that the terms and conditions of Defendants' employment with Roth is relevant for two reasons:

First, RHI believes that Roth was able to make offers to certain Defendants and provide them with certain terms because it received RHI's confidential business information from one of the Defendants.  For example, RHI contends

that Aldava provided Roth RHI's confidential information to allow it to fashion offers to Sherman and Greenwood.  Moreover, RHI believes that Ainsworth may have engaged in similar activity in an effort to get Hernandez to join him at Roth.  Second, RHI needs to know if any of the job offers were contingent or otherwise based on one of the Defendants providing Roth with RHI's confidential information.  RHI needs to know how Roth formulated and communicated the terms of each Defendant's position to Defendants and what if, anything, any of the Defendants said in reply.

(ECF No. 58 at 6:14-24.)

The Court believes RHI has adequately demonstrated the relevance of the requested information.  RHI shall not be precluded from inquiring into the terms and conditions of Defendants' employment with Roth.

### 3.    Category Nos. 18 and 22

Category No. 18 seeks Roth's business practices or business strategies related to recruiting Defendants from RHI, although RHI agreed to limit the category to the recruiting of Defendants.  (ECF No. 58-2 at 4.)  Category No. 22 seeks information about any strategy, plan, or intention by Roth to focus on recruiting RHI employees, although RHI agreed to limit the category to the recruiting of Defendants.  (*Id.* at 6.)

During the meet and confer process, the parties relied on the same arguments they made in connection with Category Nos. 1-6.  In addition, RHI now argues that Category Nos. 18 and 22, as modified, are relevant because although "Roth is not a party, each of the six Defendants were recruited and left RHI's employ within a short period of time.  RHI does not believes this is a coincidence whether at the sole hands of Defendants' recruitment or with Roth's involvement.  Moreover, RHI believes that the Defendants' recruitment may have had to do with their knowledge of and access to RHI's confidential information."  (ECF No. 58 at 7:20-24.)  RHI further contends that in addition to the specific instances of unlawful recruitment alleged in the complaint, it "should also be permitted to ask a Roth deponent questions regarding how the other Defendants came to Roth.  Documents will not tell RHI if Roth recruited Defendants because they orally represented that they had a book of business, access to specific clients or candidates, or would be able to convince

other RHI employees to make the move.  Such information is important to RHI's case."
(*Id.* at 8:1-5.)

The Court finds that Roth's business strategies, plans, and intentions to recruit Defendants, assuming such information exists, are not relevant to the claims and defenses in this case.  RHI is already entitled to inquire into what Defendants may have told Roth during the hiring process about RHI's confidential information and employees.  *See supra* Part III(A)(1).  Thus, to the extent Category No. 18 seeks information about Roth's hiring of Defendants, that information is already covered by a separate category.  Category No. 18 is duplicative in this respect.  Moreover, Roth's business plan, strategies, and intentions are not relevant to the claims against Defendants.  Based on the current stage of the pleadings, Roth's purposes in hiring Defendants are irrelevant.

Accordingly, except for the area of Roth's actual hiring process regarding Defendants and the terms and conditions of Defendants' employment with Roth, the Court finds that RHI is not entitled to question Roth's representative concerning the topics identified in Category Nos. 18 and 22.

### 4.    Category No. 19 and Request No. 154

Category No. 19 seeks Roth's business practices or business strategies related to hiring employees who have signed agreements with their prior employers that contain post-termination obligations, although RHI has agreed to limit the category to Defendants, *i.e.*, whether Roth had in place practices or strategies to ensure that Defendants did not violate their agreements with RHI.  (ECF No. 58-2 at 5.)  Request No. 154 seeks all Roth policies, procedures, practices, or requirements referring or relating to the hiring of employees bound by a non-competition, non-solicitation, or non-disclosure agreement, although RHI has agreed to limit the request to Defendants.  (*Id.* at 20.)

RHI contends that "[t]estimony and related documents regarding how Roth dealt with the fact that each of the Defendants had an employment agreement with RHI that contains post-termination obligations goes to the heart of RHI's case.  The question is what did Roth do if anything to inform the Defendants that they were bound by agreements with

13

RHI and, more importantly, how the Defendants reacted to those instructions." (ECF No. 58 at 8:14-19.) RHI contends that at least one of the Defendants represented to Roth that she was not subject to any post-termination agreement with a previous employer, and that a Roth employee told another Defendant that she might not have to provide Roth with her RHI employment agreement given that Roth already knew what RHI's agreement looks like. RHI further contends it "does not know what, if anything Roth did after those forms were completed, whether the other Defendants ever executed similar forms, or whether any additional procedures were required. RHI should be able to question a Roth deponent about its processes for checking on and reviewing Defendants' agreements with their former employees. RHI needs to know if the Defendants were told by Roth to abide by their agreement, what exactly they were told, and whether Defendants ignored those instructions." (*Id.* at 8:25-9:5.)

The Court agrees with RHI that testimony and documents regarding what Roth told Defendants about their agreements with RHI is relevant to RHI's claims against Defendants for breach of contract and unfair competition. RHI is permitted to obtain testimony and documents from Roth regarding Defendants' employment agreements with RHI including any representations by Defendants to Roth about those agreements (or lack thereof), whether Roth had discussions with or provided instruction to Defendants concerning those agreements, and Defendants' responses to such instruction. However, Category No. 19 and Request No. 154, even as modified by RHI, go beyond this relevant and discoverable information. RHI is also seeking to know whether Roth's interactions with Defendants occurred as part of Roth's general business practices or strategy. This is not relevant to the claims or defenses in the lawsuit. RHI also seeks to discover how Roth responded to representations made by Defendants. Unless Roth's response consisted of some further discussion or instruction to Defendants, Roth's internal response to the information provided by Defendants is not discoverable.

/ / /

/ / /

## 5.   Category No. 23

Category No. 23 seeks to discover any strategy, plan, or intention by Roth to focus on recruiting RHI's employees, although RHI has agreed to modify the category to include any strategy, plan, or intention *by Defendants* to obtain or provide RHI's confidential information or any other RHI documents to Roth or to use such information for Roth's benefits.  (ECF No. 58-2 at 6-7.)

During the meet and confer process, the parties relied on the same arguments they made in connection with Category Nos. 1-6.  In addition, Roth argued that it is improper and unnecessary to ask Roth what Defendants were thinking, and that RHI should ask Defendants rather than Roth.  RHI responded that the category asks for more than what Defendants were thinking and, even if it did not, "whether Defendants told their employer what they were thinking on this category is relevant information, which RHI should be allowed to test Defendants' deposition testimony against."  (*Id.* at 7.)

Obviously, to the extent Defendants did not disclose to Roth any strategy, plan, or intention to provide RHI's confidential information or other RHI documents to Roth or to use such information for Roth's benefit, Roth would not be required to disclose information it never obtained.  However, this category, as modified by RHI, is relevant to Defendants' actions and RHI's claims against them.  To the extent Defendants expressed their strategy, plan, or intention to Roth, Roth is required to disclose this information during the deposition.  In addition, if Roth became aware of Defendants' strategy, plan, or intentions through means other than by disclosure from Defendants, Roth is required to disclose this information.

## 6.   Category No. 24, Request Nos. 156, and Proposed New Category No. 160

Category No. 24 and Request No. 156 seek testimony and documents concerning Roth's policies, procedures, practices, or requirements for documenting its contacts with its existing and prospective clients and candidates, although RHI has agreed to limit the category and request to Roth's policies, procedures, practices, or requirements for documenting its contacts with Roth's existing and prospective clients and candidates in the

divisions or departments where Defendants work(ed).  (*Id.* at 8, 21.)

RHI contends this information is "aimed at understanding how to test whether a Defendant or other deponent is being truthful when and if they state that a client or candidate was previously, i.e. before the applicable Defendant became employed, a client or candidate at Roth."  (*Id.* at 8, 21-22.)  RHI also contends the information is relevant because one of Defendants' defenses to RHI's claim that Defendants unlawfully used RHI's confidential information to solicit RHI's clients and candidates is that the solicitation was not wrongful because the client or candidate had previously worked for Roth.  (ECF No. 58 at 10:20-25.)  RHI further contends that "whether or not the clients and candidates at issue were Roth clients and candidates prior to Defendants' arrival at the company is clearly related to the case regardless of whether or not it constitutes information regarding Roth's business practices."  (*Id.* at 11:3-6)

In an effort to calm Roth's concerns, RHI has proposed a new document request, Request No. 160, which seeks documents sufficient to show Roth's prior business history with any client or candidate that Defendants are working with, worked with, or have made contact with at Roth and that Roth contends it did business with prior to the date it hired the applicable Defendants.  (ECF No. 58-2 at 23.)  Roth initially objected to this proposed request on grounds that it was not included in the original subpoena, but it later agreed to respond to Request No. 160 if it is limited to the clients and candidates at issue in the case.  (*Id.*)  RHI agreed on the condition that an agreement regarding the verification of clients and candidates could be reached.  (*Id.*)

Roth's policies, procedures, practices, or requirements for documenting its contacts with its existing and prospective clients and candidates, even if limited to the divisions or departments where Defendants work, is unduly intrusive of a non-party competitor.  The Court elects to substitute proposed Request No. 160 in place of Category No. 24 and Request No. 156.  Moreover, the Court has already resolved the dispute regarding the verification of clients and candidates.  *See supra* Part III(A).  Roth shall respond to Request No. 160.

### 7.    Category No. 29

Category No. 29 seeks testimony concerning the procedures and processes undertaken by Roth to confirm that it and none of its current and former employees are in possession of RHI's confidential information or any other RHI documents, although RHI has agreed to limit the category to the procedures and processes undertaken by Roth to confirm that it and none of its current and former employees are, as a result of Defendants' conduct, in possession of RHI's confidential information or any other RHI documents. (ECF No. 58-2 at 8-9.)

RHI contends it is entitled to investigate whether any of its confidential information or other documents were provided by Defendants to Roth and what Roth has done to ensure it is not in possession of such information.  (*Id.* at 9.)  RHI further contends it "needs to know that Roth has confirmed that the confidential information Defendants took from it is not on Roth's system."  (ECF No. 58 at 12:9-10.)

The Court finds Category No. 29 to be unduly intrusive.  RHI has not shown why it should be permitted to inquire into Roth's procedures and processes.  Although knowledge of which RHI documents were provided by Defendants to Roth is plainly relevant, this inquiry can be answered by requiring Roth to produce all RHI documents it obtained from Defendants.  This modification avoids imposing on Roth, a non-party, the burden of explaining to a competitor its internal procedures and processes, when those procedures and processes are not relevant to the claims against Defendants.  The Court disagrees with RHI as to the relevancy of "what Roth has done to ensure it is not in possession of any [RHI] information."  (ECF No. 58-2 at 9.)

Accordingly, RHI shall not be permitted to question a Roth deponent about the information requested in Category No. 29.  Instead, Roth shall produce all RHI documents (confidential or otherwise) in its possession, custody, or control that it obtained from Defendants.  In addition, to the extent Roth obtained RHI documents from Defendants but those documents are no longer in Roth's possession, custody, or control, RHI will be permitted to ask a Roth deponent to identify such documents.  Inquiry into what Roth did

17

with the documents to make them no longer in Roth's possession, custody, or control is not permitted.

### 8.      Category No. 31 and Request No. 159

Category No. 31 and Request No. 159 seek testimony and documents concerning the revenue generated for Roth by Defendants, although RHI has agreed to limit them to revenue generated for Roth by Defendants Greenwood, Hernandez, and Sherman, and revenue generated for Roth by Defendants Ainsworth, Aldava, and Schweitzer for any clients or candidates.  (*Id.* at 10, 22.)

Roth agrees to provide revenue information related to the clients and candidates at issue in this case.  Thus, there is no dispute with respect to revenue information generated by Defendants Ainsworth, Aldava, and Schweitzer.  However, Roth objects to providing all revenue information generated by Defendants Greenwood, Hernandez, and Sherman. As to these three Defendants, RHI claims full revenue information is needed "because RHI is claiming damages based on the value of the employees it lost as the result of certain Defendants' conduct."  (*Id.* at 10.)  Roth contends revenue that is not tied to the clients and candidates at issue is too speculative to be recoverable under RHI's theory that recoverable damages include the value of Defendants' employment.

The Court finds that this discovery should, for all six Defendants, be limited to the clients and candidates at issue.  Roth is a non-party competitor of RHI and the Court is concerned that requiring it to produce all revenue generated by Defendants Greenwood, Hernandez, and Sherman improperly invades into Roth's confidential business information.  While the Court recognizes the relevance of the information, the Court also concludes that it is based on speculation that revenue generated by certain Defendants while at Roth would have been obtained at RHI had those Defendants remained at RHI. Numerous factors could influence the amount of revenue generated, including Defendants' use of Roth's proprietary business information or trade secrets that would have been unavailable to them had they never joined Roth.  Given the speculative nature of this information, the Court finds that protection from disclosure is appropriate.  *See* FED. R.

CIV. P. 26(c)(1)(G) (authorizing protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.").

Accordingly, the Court modifies Category No. 31 and Request No. 159 to be limited to revenue generated by Defendants for any clients and candidates at issue in this case.

### 9.   Proposed New Category Nos. 32 and Request Nos. 74-79

Request Nos. 74-79 seek all documents referring or relating to Defendants' employment with Roth, including, but not limited to, each Defendants' resume, applications for employment, personnel file, job offer, performance expectations, job description, job duties, and documents relating to Defendants' compensation bonuses and benefits.  (ECF No. 58-2 at 16.)  Roth initially objected to the use of the phrase "all documents," so RHI proposed limiting the requests to each Defendants' resume, application for employment, personnel file, job offer, performance expectations, job description, job duties, and documents sufficient to reflect Defendants' compensation bonuses and benefits.  (*Id.*)

Roth agrees to produce these documents with one exception.  Roth argues the phrase "benefits" is ambiguous and irrelevant and that Defendants' and Roth's privacy rights outweigh any relevance.  (*Id.* at 16-17.)  RHI contends (1) Defendants' benefits "have the same relevance as any other incentive that may have been used to entice the Defendants to join Roth"; (2) Roth waived its ambiguity and privacy objections by not asserting them in its formal objections; and (3) any privacy concern is cured by the Protective Order issued in this case.  (ECF No. 58 at 15:11-24.)  The Court agrees with RHI.  The term "benefits" is not ambiguous in the context of the specific types of documents requested by RHI, and any privacy concerns can be protected by designating the benefits documents pursuant to the Protective Order.  Moreover, Roth waived these objections.  Finally, Defendants' benefits package is relevant in that it is part of the compensation package offered to each Defendant, and such information is reasonably calculated to have had at least some impact

on Defendants' decision to leave RHI.

Accordingly, Roth shall produce all documents responsive to Category Nos. 74-79, as limited by RHI to include each Defendants' each Defendants' resume, application for employment, personnel file, job offer, performance expectations, job description, job duties, and documents sufficient to reflect Defendants' compensation bonuses and benefits.[5]

**10.    Proposed New Category Nos. 33 and 34, and Request Nos. 80-100 and 101-124**

Request Nos. 80-100 seek all documents regarding certain RHI clients that RHI has, through investigation and discovery in this case, determined that Defendants interacted with since becoming employed by Roth, including, but not limited to communications with the clients' employees, files, contracts, pitches, marketing materials, pricing information, and term sheets. (ECF No. 39-2 at 27-31.) Roth initially objected to the use of the phrase "all documents," so RHI proposed limiting the requests to the following categories of documents: communications with the clients' employees, files, contracts, pitches, marketing materials, pricing information (bill rates), hourly rates, term sheets, placement records, placement requests, placement fees, bills, invoices, commission information, and

---

[5]     RHI proposed a new category of deposition testimony, Category No. 32, as a compromise to Roth's objection to the phrase "all documents." (*See* ECF No. 58-2 at 11.) RHI contends Roth has refused to provide the specific names of documents that RHI is seeking in connection with Request Nos. 74-79, and that the proposed deposition category will allow RHI to identify those documents that may not be included in the specific list of documents identified by Roth. However, RHI provides no authority for the position that a non-party witness (*i.e.*, Roth) should be required to identify for a party (*i.e.*, RHI) what types of documents that party should include in its subpoena to the non-party. In addition, RHI does not need to know the exact name of the documents contained in, for example, Defendants' Roth personnel file. Production of the personnel file is sufficient. Roth has agreed in good faith to produce the documents that fall within the general categories of documents requested by RHI. Finally, the proposed new category is not necessary because RHI is already permitted to inquire into the terms and conditions of Defendants' employment with Roth in connection with Category Nos. 9-14. *See supra* Part III(A)(2).

related documents.  (ECF No. 58-2 at 17.)

Request Nos. 101-124 seek all documents, including communications, regarding RHI candidates that Defendants interacted with since becoming employed by Roth.  (ECF No. 39-2 at 31-33.)  Again, Roth initially objected to the use of the phrase "all documents," so RHI proposed limiting the requests to the following categories of documents regarding candidates: communications with the candidates, files, contracts, resumes, qualifications, pricing information (bill rates), hourly rates, term sheets, placement records, placement requests, placement fees, bills, invoices, commission information, and related documents. (ECF No. 58-2 at 18-19.)

Roth objected to producing documents responsive to RHI's modified requests on the basis that "[i]n response to Defendants' document requests, RHI refused to produce these same types of records contained in its MicroJ system regarding these same clients/candidates.  If RHI agrees to produce them, Roth will do the same.  Can't have it both ways." (*Id.* at 17, 19.)   RHI responded by noting that it has not refused to produce MicroJ records but that it had made overbreadth objections to Defendants' requests on which counsel could meet and confer, and Defendants had not proposed any limitations like RHI has done.  Roth responded: "Defendants agree to limit their request for MicroJ records in the same way as you have limited the request above.  If that is ok with you, then we have a deal." (*Id.* at 17.)  Counsel the argued whether their meet and confer over RHI's subpoena to Roth was an appropriate forum to meet and confer over Defendants' document requests to RHI.

As it stands, Roth has made no objection to the relevancy of the documents sought in Request Nos. 80-124, as modified by RHI.  The Court appreciates that there is a dispute over potentially similar documents[6] sought by Defendants from RHI.  However, Roth

---

[6]      Without the benefit of reviewing Defendants' requests to RHI, RHI's objections to those requests, or any briefing on that dispute, the Court cannot conclude that Defendants' requests are the same as RHI's requests to Roth.  This is especially true given that RHI appears to have demonstrated differences in the requests. (*See* ECF No. 58 at 17:22-28.)

21

1  cannot use that dispute, over which no adequate meet and confer has yet occurred, to refuse

2  to produce admittedly relevant documents.  Accordingly, Roth shall produce all documents

3  responsive to Request Nos. 80-124, as modified by RHI.[7]

4      **11.    Request No. 12**

5      Request No. 12 seeks all documents, including communications, referring or relating

6  to any effort by Defendants to solicit, recruit, engage, or hire current or former employees

7  of RHI for Roth's benefit.  (ECF No. 39-2 at 18.)

8      Roth contends it should only be required to produce documents concerning

9  Defendants Ainsworth and Hernandez's alleged solicitation of Danielle Healis, and

10  Defendants Greenwood and Sherman's alleged solicitation of Defendant Aldava, because

11  these are the only allegations of solicitation in the complaint.  (ECF No. 58-2 at 15-16.)

12  The Court disagrees.  RHI is entitled to investigate whether additional solicitation of other

13  RHI employees occurred, even if RHI is not currently aware of such facts.  *See* Fed. R.

14  Civ. P. 26(b)(1) advisory committee notes (2000 amendments) (information relevant to the

15  claims and defenses in a case may, in a given action, include "other incidents of the same

16  type.").  Accordingly, Roth shall comply with Request No. 12 by producing all documents,

17  including communications, referring or relating to any effort by Defendants to solicit,

18  recruit, engage, or hire current or former employees of RHI for Roth's benefit.

19      **12.    Request No. 138**

20      Request No. 138 seeks all communications between Roth and any current or former

21  RHI employee referring or relating to employment or employment opportunities with Roth,

22  although RHI has agreed to limit the request to communications between Roth and any of

23  the Defendants.  (ECF No. 58-2 at 20.)

24  / / /

25

26

27  [7]    RHI's proposed new categories of deposition testimony, Category Nos. 33-34, are
    inappropriate for the same reasons set forth above in connection with proposed Category
28  No. 32.  *See supra* note 5.

Roth contends this request is duplicative of Request Nos. 1-6[8] and, to the extent it is not duplicative, it seeks irrelevant documents because Roth's business practices with respect to soliciting Defendants is not at issue.  (*Id.*)

As an initial matter, the Court overrules Roth's objection that this request is duplicative.  To the extent it overlaps with documents sought by Request Nos. 1-6, Roth has already agreed to produce the documents.  The Court also finds that RHI's proposed limitation properly narrows the scope of this request to focus only on Roth's communications with Defendants relating to employment or employment opportunities.  Such communications are plainly relevant to RHI's claims against Defendants, and all responsive documents should be produced.  The request does not ask to disclose Roth's business practices with respect to soliciting Defendants.  Rather, it seeks communications between Roth and Defendants surrounding the principal issue in this lawsuit, *i.e.*, Defendants' decision to begin working at Roth.  Although such communications are relevant, RHI's argument that it is entitled to general employment announcements misses the fact that such announcements are not communications between Roth and Defendants and, thus, are not contemplated by this request.

### 13.    Conclusion

Based on the foregoing, Roth's motion for protective order is **GRANTED in part** and **DENIED in part**.  Subject to the foregoing analysis, Roth shall produce all responsive documents to RHI no later than **<u>September 8, 2015</u>**.  Counsel for Roth and RHI shall meet and confer to schedule a mutually convenient date for Roth's deposition, which shall be conducted on or before **<u>September 22, 2015</u>**.

Notwithstanding the foregoing, Roth is not precluded from designating documents or deposition testimony as "Confidential" or "Attorneys' Eyes Only" pursuant to the

---

[8]    Request Nos. 1-6, as limited by the agreement of RHI and Roth, seek all documents, including communications, referring or relating to the solicitation or recruitment of Defendants to join Roth.  (*See* ECF No. 58-1 at 7.)

Court's January 29, 2015 Protective Order.  (ECF No. 21.)

**B.   RHI's Motion to Amend Scheduling Order**

RHI requests that the February 22, 2015 Scheduling Order (ECF No. 25) be amended to extend: (1) the deadline to amend pleadings "within two weeks after [Roth] fully complies with the subpoena issued by RHI"; (2) RHI's expert designation deadline from May 15, 2015, to fifteen days from the date this Order is filed; (3) Defendants' expert designation deadline from May 29, 2015 to thirty days from the date this Order is filed; and (4) the supplemental expert designation deadline to forty-four days from the date this Order is filed.  (ECF No. 43-3 at 8:18-9:13.)

RHI contends good cause exists for the requested extensions because (1) RHI subpoenaed documents and testimony from Roth to occur before the expiration of the May 15 deadline to move to amend pleadings; (2) RHI has been unable to obtain documents or testimony from Roth because Roth failed to appear at the deposition or produce any documents[9] in an attempt to "block discovery" related to Defendants and RHI; (3) Roth's refusal to comply with the subpoena would prejudice RHI if RHI is not permitted to file an amended complaint should additional discovery warrant amendment; and (4) the current Scheduling Order does not permit RHI to identify experts related to new claims in the [First Amended Complaint], given that the [First Amended Complaint] will not be deemed filed until and unless this Court grants the amendment."[10]  (ECF No. 43-3 at 7:23-9:9.)

/ / /

---

[9]     RHI's repeated accusations that Roth failed to appear at the deposition are disingenuous.  Roth objected to the subpoena, both in its entirety and as to individual categories and requests.  Roth's objections excuse compliance with the subpoena until a court orders otherwise.  *See* FED. R. CIV. P. 45(d)(2)(B)(ii) ("These acts may be required only as directed in the order. . . .").

[10]     Judge Hayes granted RHI's unopposed motion for leave to file a First Amended Complaint, which added a claim for misappropriation of trade secrets against Defendants Aldava, Greenwood, Hernandez, and Sherman, on July 15, 2015.  (*See* ECF No. 61.)

Defendants do not oppose extending the deadline to identify experts specifically related to the new causes of action for misappropriation in RHI's First Amended Complaint.  However, Defendants oppose RHI's request to extend the deadlines to move to amend pleadings or to identify experts with respect to preexisting claims for relief in the original complaint.  (ECF No. 50 at 2:3-8.)

### 1.    Legal Standards

Rule 16(b) requires that, "as soon as practicable," district courts issue a scheduling order "limit[ing] the time to join other parties, amend the pleadings, complete discovery, and file motions."  FED. R. CIV. P 16(b)(2), (3)(A).  A scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  Although "Rule 15(a) liberally allows for amendments to pleadings," *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000), that policy does not apply after a district court has issued "a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline [has] expired."  *Id.*  Rather, under those circumstances, parties seeking to amend their complaints "must show good cause for not having amended their complaints before the time specified in the scheduling order expired."  *Id.* (citing *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992)); *see also Aliota v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011) (identifying the majority of circuit courts that "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.").  "This standard 'primarily considers the diligence of the party seeking the amendment.'"  *Id.* (quoting *Johnson*, 975 F.2d at 609).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

/ / /

/ / /

/ / /

### 2.   Motion for Leave to Amend Deadline[11]

As for the deadline to move for leave to amend the pleadings, the Court finds RHI has established it has acted diligently to obtain discovery from Roth that might support additional claims in a further amended complaint.  Indeed, RHI served its subpoena on Roth only two months after the Court issued the Scheduling Order, and the date set for compliance was set to occur prior to the deadline to move to amend pleadings.

Defendants' arguments that RHI's request is premature and that RHI has known since the outset of this case of potential claims against Roth do not account for the potential that a further amended complaint might also include additional claims against Defendants based on the discovery obtained from Roth.  Moreover, RHI did not, as Defendants contend, wait seven months to serve a subpoena on Roth.  Discovery was stayed pursuant to Federal Rule of Civil Procedure 26(d)(1) until the parties' Rule 26(f) conference which appears to have occurred in mid-December 2014 prior to their filing of a Joint Rule 26(f) Report on December 22, 2014.  (ECF No. 11.)  It is not unreasonable to expect RHI to focus its initial discovery efforts on obtaining documents and deposition testimony from Defendants before issuing a subpoena to Defendants' current employer, Roth.

In short, RHI has been diligent in seeking the discovery on which it may rely to assert additional claims in an amended complaint.  Further, there is no prejudice to Defendants.  Accordingly, RHI's motion to amend the Scheduling Order by continuing the deadline to move to amend pleadings is **GRANTED**.  The Court will issue a separate Amended Scheduling order setting forth the new deadline.

/ / /

/ / /

---

[11]   The Court reminds RHI that the May 15, 2015 deadline was a deadline to file a motion to join other parties, amend the pleadings, or file additional pleadings.  (*See* ECF No. 25 at ¶ 2.)  RHI's motion repeatedly characterizes the deadline as one to amend the pleadings, but RHI must first obtain leave of court to file a motion to join other parties, amend the pleadings, or file additional pleadings.  *See* Fed. R. Civ. P. 15(a)(2).

### 3.   Expert Designation Deadlines

As to the expert designation deadlines, Defendants contend that RHI only argued an extension was needed to identify experts related to new claims in the First Amended Complaint, but that RHI failed to identify experts in support of the claims in its original complaint and that RHI offers no good cause for its failure or inability to do so. Defendants contend "the Court should only extend the parties' deadline to identify experts with respect to RHI's newly added misappropriation claim in the [First Amended Complaint]." (*Id.* at 3:10-14.) RHI fails to respond to this argument in its reply.

Notwithstanding RHI's failure to address this issue in its reply, the Court is not inclined to accept Defendants' argument. As noted above, RHI has diligently sought to complete discovery. It is not unreasonable to assume that RHI needed to obtain the discovery from Roth in order to adequately evaluate what experts to designate (on any of RHI's claims) and the scope of RHI's experts' anticipated testimony. Had there been no delay in obtaining discovery from Roth there likely would be no need to extend the expert designation deadlines. Although the better course would have been for RHI to comply with the deadline despite the pendency of its motion to amend the Scheduling Order, the Court will excuse RHI's non-compliance. Moreover, extending the deadline for all purposes will foster the Court's preference that cases be resolved on their merits and it will avoid potential enforcement problems were the Court to only permit RHI to designate experts only as to the misappropriation claims. Finally, Defendants will suffer no prejudice if the expert designation deadlines are extended without qualification.

Accordingly, RHI's motion to amend the Scheduling Order to continue RHI's expert designation deadline is **GRANTED**. As noted above, the Court will issue a separate Amended Scheduling Order setting forth the new expert designation deadlines.

IT IS SO ORDERED.

Dated: August 6, 2015

_____
DAVID H. BARTICK
United States Magistrate Judge